**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Raul MORALES, Defendant–Appellant.**

No. 91–3074.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1993.

Decided May 25, 1993.

Rehearing Denied June 18, 1993.

388

Barry R. Elden, Asst. U.S. Atty., Haywood E. McDuffie (argued), Office of the United States Attorney, Chicago, IL, for plaintiff-appellee.

Mary E. Gentile (argued), Chicago, IL, for defendant-appellant.

Before POSNER and RIPPLE, Circuit Judges, and TIMBERS, Senior Circuit Judge.[*]

POSNER, Circuit Judge.

Raul Morales pleaded guilty to conspiracy to distribute, and possession with intent to distribute, cocaine and was sentenced to 109 months in prison. His appeal challenges the judge's decision to enhance his offense level by two points, from 28 to 30, which, given Morales' criminal history, had the effect of raising the guideline range from 78–97 months to 97–121 months; the judge gave him the midpoint of the range. The ground for the enhancement was that Morales had been "an organizer, leader, manager, or supervisor" of the conspiracy. United States Sentencing Guidelines § 3B1.1(c).

■ According to the presentence investigation report—the accuracy of which Morales does not question—undercover agent Tovar, posing as a buyer of cocaine, agreed to buy three kilograms from Morales at a price that the two men negotiated. Morales later agreed to increase the quantity to four kilograms, which he would obtain from his source, known as "El Primo." While waiting for the cocaine to arrive, Tovar hung around the tavern that Morales owned; and once, when he asked for Morales, he was directed to a basement room where he found a man

who was cutting cocaine into small packets for retail distribution and who told him that Morales had gone upstairs. Another time Morales told Tovar that he had stored large quantities of cocaine and marijuana in the basement. Finally the day arrived for the exchange of the four kilograms of cocaine for the agreed-upon purchase price of $136,000. Morales accompanied Tovar to the site where the exchange was to take place (an apartment), and was arrested there.

■ He argues that these facts show only that he was a broker, arranging a deal between El Primo and Tovar, not an "organizer, leader, manager, or supervisor." Even if the fellow cutting cocaine in the basement of Morales' tavern can be presumed to have been working under his supervision, that work involved the preparation of cocaine for sale at retail in packets of only one-tenth of a gram. Tovar was pretending to be a bulk buyer; the little packets were not intended for him. However, it is plain from the guidelines commentary that the two-level enhancement for being an "organizer, leader, manager, or supervisor" is not limited to cases in which the defendant supervised one or more underlings in the particular transaction that is the foundation of the criminal charge. It is enough that more than one person was involved in the criminal activity and that the defendant played a leadership as distinct from a followership role. United States v. Herrera, 878 F.2d 997 (7th Cir.1989); United States v. Barreto, 871 F.2d 511 (5th Cir. 1989). That is the case with respect to Morales. He negotiated the price with Tovar and arranged with his source for the delivery of the agreed-upon quantity. He shepherded Tovar through the stages of the transaction and accompanied him to the closing. The evidence about the use of the basement was relevant in showing that Morales was a substantial drug operator and not merely a flunky, lookout, or other menial. The fact that he did not have enough cocaine in inventory, as it were, to meet Tovar's demand and ordered an additional quantity "drop shipped" from El Primo to the apartment is not inconsistent with his having organized

[*] Hon. William H. Timbers of the Second Circuit, sitting by designation.

the sale of this substantial quantity of drugs to Tovar. It is as if Tovar had gone to buy a car from a dealer who, not having in stock the model that Tovar wanted, arranged to obtain the model for him from another dealer. Modern manufacturers try to reduce the costs of holding inventory by "just-in-time" buying practices, and this means that sometimes they don't have an item in inventory when they need it. We can expect suppliers of illegal drugs to be even more wary of holding excessive inventories. A large inventory increases the risk of detection and enhances punishment, and if it is discovered it will be seized without any compensation to the owner for the loss of his investment.

It would of course have been much better if the judge had spelled all this out, rather than just saying, "Well, I heard the evidence at trial. I am inclined to agree with [the government's lawyer] that [Morales] was not the overall leader. However, he certainly was someone who was a higher-up in this particular organization." The cursory character of the judge's ruling is understandable, however. The presentence report had recommended a four-level enhancement but the government's lawyer had taken the position that Morales should receive only a two-level enhancement, so that the judge thought he was exercising lenity. Morales' lawyer did not abandon his objection to any enhancement, but all he said on that score was "we would stand either by the request for reduction or that no points be given for this." So perfunctory an argument invites a perfunctory ruling, though it would have been much better as we have said if the judge had spelled out the grounds for a ruling that may have resulted in years of additional prison for the defendant.

■ The judge's remark, "I heard the evidence at trial," is the opening wedge for Morales' other attack on the enhancement. Morales' codefendants—other members of the conspiracy, including El Primo—had been tried right after Morales had pleaded guilty; the sentencing hearing for Morales was held shortly after the trial. The trial was before the same judge and the evidence was clear in his mind when he sentenced Morales. Morales argues that it was improper for the judge to sentence him on the basis of evidence presented at a trial to which he was not a party. Neither he nor his lawyer was present at that trial and his lawyer speculates that the defendants may have tried (unsuccessfully) to obtain an acquittal by "trying the empty chair"—shifting all the blame to Morales, who wasn't there to defend himself.

■ Under the sentencing guidelines, as under the previous regime of federal sentencing, the rules of evidence do not apply to sentencing hearings, although the "evidence" that the judge does rely on in sentencing the defendant must be reasonably reliable. *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (pre-guidelines); *Williams v. Oklahoma*, 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959) (ditto); *United States v. Barnes*, 907 F.2d 693, 695 (7th Cir.1990) (ditto); U.S.S.G. § 6A1.3(a) (policy statement); *United States v. Helton*, 975 F.2d 430, 433 (7th Cir.1992) (post-guidelines); *United States v. Soria*, 965 F.2d 436, 443 (7th Cir.1992) (ditto). So there is nothing improper about a judge's taking into account evidence that mightn't have been admissible. (The transcript of a witness's testimony in a different legal proceeding is not admissible, because it is hearsay if offered for the truth of the testimony recorded in it unless the party against whom it is being offered had a chance to test that testimony, as by cross-examination, in that proceeding. Fed.R.Evid. 804(b)(1). Morales, who was not a party to the trial of his codefendants, did not have such a chance.) But of course the judge must not do this in a way that creates unfair surprise. The defendant has a right to know what evidence will be used against him at the sentencing hearing. Fed.R.Crim.P. 32(a)(1); 18 U.S.C. § 3552(d); U.S.S.G. § 6A1.3(b) (policy statement); *United States v. Nuno–Para*, 877 F.2d 1409, 1415 (9th Cir.1989); *United States v. Ramirez Acosta*, 895 F.2d 597, 600–01 (9th Cir.1990). So if the judge was going to base an enhancement of Morales' sentence on the evidence in the trial of Morales' codefendants, he should have warned Morales of this and given him a chance to read the transcript of the trial. But any argument of unfair

surprise is forfeited by Morales' failure to have raised the argument in the district court. As soon as the judge said that he was going to rely in part on the evidence at the trial, Morales' counsel should have objected or asked for a continuance to permit him to read the transcript. There was no such objection and request.

It is true that in a criminal case a "plain" error, implying a high degree of prejudice to the defendant as well as a high degree of certainty that it really was an error, *United States v. Caputo,* 978 F.2d 972, 974–75 (7th Cir.1992), can be made the basis of a reversal even if the error was not drawn to the attention of the district court. Fed. R.Crim.P. 52(b). Even in this court, however, Morales' lawyer is not prepared to show that the transcript of the trial contains material bearing on the enhancement issue that is inaccurate or otherwise inappropriate for consideration in the sentencing hearing. In fact, she acknowledged that she has never looked at the transcript. So far as appears, not only was any objection to the judge's use of the evidence at the trial waived, but any error in that use was harmless and therefore certainly not plain.

AFFIRMED.