**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Nitza ANAYA, Defendant–Appellant.**

**No. 93–3522.**

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1994.

Decided Aug. 16, 1994.

Barry R. Elden, Asst. U.S. Atty., James Shapiro (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

James A. Graham (argued), Chicago, IL, for defendant-appellant.

Before ESCHBACH, COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Nitza Anaya plead guilty to charges involving conspiracy to embezzle federal funds. Under § 3B1.1 of the Sentencing Guidelines, her offense level was adjusted upward for her aggravating role in the offense as an organizer or leader. She appeals the sentence imposed.

## I. FACTS

Nitza Anaya worked for the Illinois Migrant Council as an account representative. The Migrant Council was under contract to the President's Office of Employment and Training to assist in identifying employers willing to hire and train immigrant workers in exchange for receiving funds appropriated under the federal Job Training Partnership Act. Participating employers received reimbursement from the federal government of one half of a trainee's salary for a period of up to six months. The purpose of this program was to encourage employers to hire and train immigrant workers in the hope that such workers would remain employed even after the federal funds were exhausted.

Anaya and co-defendant Linda Smith were charged with conspiring to obtain $67,310.00 from federal funds in violation of 18 U.S.C. §§ 371, 665(a), and 1001. The government claimed that Anaya and Smith planned to have the money paid to a fictitious corporation ("Smith Wood Works") as reimbursement for the training of non-existent employees.

Both defendants plead guilty at separate hearings. The district court sentenced Smith to 5 years supervised release. At Anaya's sentencing hearing two months later, the district court determined that Anaya's base level was 6, and then increased the level 5 points reflecting the amount of money involved, 2 points for a breach of trust, 2 points for more than minimal planning, 2 points for her aggravated role in the criminal enterprise, and 2 points for obstruction of justice. The court then reduced Anaya's offense level 3 points for acceptance of responsibility resulting in a base level of 16. She was sentenced to 27 months incarceration followed by 3 years of supervised release and ordered to pay $67,310.00 in restitution. Anaya now appeals the § 3B1.1(c) upward adjustment for being an organizer or leader of the criminal activity.

## II. DISCUSSION

 The determination of what role a defendant played in a criminal enterprise is a question of fact, *United States v. Golden,* 954 F.2d 1413, 1418 (7th Cir.1992) (citing *United States v. Ruiz,* 932 F.2d 1174, 1183 (7th Cir.1991) and *United States v. Hernandez,* 931 F.2d 16, 17–18 (7th Cir.1991); *United States v. Camargo,* 908 F.2d 179, 185 (7th Cir.1990)), while the question of whether a defendant's role in an offense can act as the basis for an upward adjustment is purely legal. *United States v. Lewis,* 954 F.2d 1386, 1396 (7th Cir.1992); *see also United States v. Skinner,* 986 F.2d 1091, 1095 (7th Cir.1993) (characterizing the § 3B1.1 determination as a "mixed" question of law and fact). Factual sentencing determinations concerning the defendant's role in the offense are reviewed on a clearly erroneous standard, (*United States v. Cotts,* 14 F.3d 300, 308 (7th Cir.1994) (citing *United States v. Spillman,* 924 F.2d 721, 723 (7th Cir.1991)), with the reviewing court giving "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *United States v. Ramacci,* 15 F.3d 75, 77 (7th Cir.1994); *see also United States v. Weaver,* 8 F.3d 1240, 1245 (7th Cir.1993). The district court's sentencing determinations are clearly erroneous only if, after considering all the evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been committed." *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

 The sentencing guidelines do not define the terms "organizer," "leader," "manager," or "supervisor." We have held, however, that the factors listed in the guidelines commentary for distinguishing between leadership-organization and mere supervision-management are equally applicable to determining whether imposition of a § 3B1.1(c) adjustment is appropriate. *United States v. Skinner,* 986 F.2d 1091, 1096 (7th Cir.1993) (citing *United States v. Brown,* 944 F.2d 1377, 1381–82 (7th Cir.1991). The factors are: (1) the exercise of decision-making authority; (2) the nature of the participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in the planning or organizing of the offense; (6) the nature and scope of the illegal activity; (7) the degree of control and authority exercised over others. *See* U.S.S.G. § 3B1.1, comment. (n. 3); *United States v. Skinner,* 986 F.2d 1091, 1096 (7th Cir.1993). Especially important, though not the sine qua non for a § 3B1.1(c) adjustment, is the amount of control the defendant exerted over other members of the criminal enterprise. *United States v. Brown,* 944 F.2d 1377, 1381–82 (7th Cir.1991); *United States v. Ramos,* 932 F.2d 611, 618–19 (7th Cir.1991); *cf. United States v. Skinner,* 986 F.2d 1091, 1097 (7th Cir. 1993).

Anaya argues that the sentencing judge erred by relying upon his own "hunch" that, as between the two co-defendants, Anaya was the "organizer and leader" of the criminal activity. Further, Anaya asserts that Smith's testimony should not have been considered during Anaya's sentencing because it was unreliable hearsay. Finally, she claims that the district court denied her due process by not sentencing both co-defendants simultaneously, and by failing to notify her in advance that Smith's sentencing testimony would be considered at Anaya's sentencing hearing. Anaya asks that this court vacate her sentence and remand to the district court for re-sentencing. For the reasons which follow we affirm the district court's § 3B1.1(c) adjustment.

### A. HEARSAY and RELIABILITY

 Anaya's hearsay objection to the consideration of Smith's testimony fails. It is well established that "[H]earsay is not only an acceptable basis for a sentencing determination it is an 'integral part of the sentencing process.'" *United States v. Smith,* 3 F.3d 1088, 1100 (7th Cir.1993) (quoting *United States v. Badger,* 983 F.2d 1443, 1459 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993). Further, we have repeatedly stated that "[U]nder the sentencing guidelines, as under the previous regime of federal sentencing, the federal rules of evidence do not apply to sentencing

hearings, although the 'evidence' that the judge does rely on in sentencing the defendant must be reasonably reliable." *United States v. Morales,* 994 F.2d 386, 389 (7th Cir.1993) (citing *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (pre-guidelines); U.S.S.G. § 6A1.3(a) (policy statement); *United States v. Helton,* 975 F.2d 430, 433 (7th Cir.1992) (post-guidelines); *United States v. Soria,* 965 F.2d 436, 443 (7th Cir.1992) (post-guidelines).

Anaya's argument regarding the use of Smith's testimony is, in effect, not that such testimony was hearsay, but that it was unreliable. While the 'evidence' used to make a sentencing determination need not be formally admissible, it must have "sufficient indicia of reliability." *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993); *United States v. Helton,* 975 F.2d 430, 433 (7th Cir.1992) (quoting U.S.S.G. § 6A1.3(a) (policy statement)). Specifically, Anaya argues that inferences about the personality traits[1] of the two defendants are not the sort of reliable evidence necessary to support an upward adjustment under § 3B1.1(c).

■ Anaya's counsel did not specifically object to the unreliability of the district court's "impressions," and the government could have argued that Anaya waived this objection. *United States v. Jackson,* 974 F.2d 57, 60 (7th Cir.1992). However, the government did not assert waiver, therefore, it has foregone the waiver issue. *United States v. Donaldson,* 978 F.2d 381, 388 (7th Cir.1992).

■ While this court has held that the 'evidence' used in sentencing must be reasonably reliable, we certainly have given no indication that a sentencing judge's use of his own observations constitutes error. Quite to the contrary, we have affirmed sentencing determinations based in part on the sentencing judge's appraisal of the personalities of the criminal participants. *See, e.g., United States v. Lewis,* 954 F.2d 1386, 1396 (7th Cir.1992) (affirming the § 3B1.1(c) adjustment where the district judge remarked on his observations of one defendant as "weak person ... fairly easily influenced" and the other as "very manipulative"). To be sure the Sentencing Guidelines foster a somewhat mechanistic approach, but experienced judicial observation remains a key factor in the federal sentencing scheme.

Anaya argues nevertheless, that at least one circuit prevents a district judge from relying on what is described as the judge's "hunch or instinct" in imposing sentence. *United States v. Ortiz,* 966 F.2d 707, 717 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993). Anaya's assertion that *Ortiz* precludes a district court judge from relying on his own instincts overstates the First Circuit's holding in *Ortiz.* The *Ortiz* court simply held that a sentencing adjustment "must be based on more than the trial judge's hunch ...," (*Id.* at 717) unsupported by any facts. The holding was not that a judge's reliance on his instincts which relate to the facts of the case constitutes error.

■ The First Circuit's holding in *Ortiz* is fully consistent with our cases because a review of a sentencing determination invariably requires an appellate court to look to the factual basis which support the district judges' inference or impressions. It would be irresponsible not to credit the inferences drawn by a district judge when that judge

---

1. Several times during Anaya's sentencing hearing the district judge referred to his impressions regarding the respective personalities of the co-defendants and their corresponding capabilities to act as the instigator or leader of the criminal activity. As where the court stated:

 Well, something that enters into the this [sentencing] mix is my own impressions of the personalities of the two people. Smith struck me as a very passive, docile, suggestible kind of person; whereas Anaya does not. Anaya strikes me as much stronger and more assertive than Smith. Now, of course, I realize that impressions can be very wrong, and maybe it's

 not fair to base any part of a decision on such an impression, but that's what I recall.

 . . . .

 Smith was not in a position to do this by herself. She didn't have the—simply didn't have the ability to get the job done, nor I think did she have the motivation or the assertiveness to do it. As between the two of them, it was Anaya's idea.

 . . . .

 The sentencing court's impression that Smith was passive and docile was based on his observation of Smith's behavior and demeanor at her plea and sentencing hearings.

analyzes the variety of information made available. *See, e.g., United States v. Lewis,* 954 F.2d 1386, 1396 (7th Cir.1992); *see also United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989) (quoting *United States v. Mejia–Orosco,* 867 F.2d 216, 220–21 (5th Cir. 1989), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989), for the proposition that "[d]etermining whether a defendant played an 'organizer' role requires the district judge to draw inferences from a variety of data including the defendant's statements and demeanor at the sentencing hearing.").

■ In the present case, the district court's sentencing determination was based on the judge's reasonable inferences drawn from Anaya's actions, as demonstrated by the evidence presented. They included her ability to perpetrate the fraud which her 'inside' position afforded. The record indicates that, as between Anaya and Smith, Anaya: 1) conceived the plan to defraud; 2) opened the post office box used to receive the reimbursement checks; 3) obtained the names of actual Council clients to use as her fictitious employees; 4) submitted the fraudulent time sheets; 5) endorsed and deposited the reimbursement checks; 6) signed the vast majority of checks drawn on the fraudulent business account; 7) recruited Smith as her accomplice; 8) instructed Smith to open the fraudulent business checking account; and 9) instructed Smith to lie to Department of Labor investigators. Further, it was Anaya's job with the Council which permitted the criminal enterprise to flourish.

■ Applying these facts to the guideline factors demonstrates that nearly every factor used to evaluate the appropriateness of imposing a § 3B1.1(c) adjustment finds support in some aspect of Anaya's action or position. Factor (1), the exercise of decision making authority, is supported by Anaya's establishing the post office box, instructing Smith to open the fraudulent business checking ac-

count, and instructing Smith to lie to Department of Labor investigators. Anaya's aggravating participation in commission of the offense (factor 2) is evident in light of Anaya's obtaining the·names of actual Council clients to use as her fictitious employees and submitting the fraudulent time sheets. Anaya's actions also satisfy factor (3), the recruitment of accomplices, because she recruited Smith. Factor (4), the claimed right to a larger share of the fruits of the crime, is only inferentially established because Anaya endorsed and deposited the reimbursement checks and wrote most of the checks drawn on the fraudulent business account. Factor (5), the degree of participation in the planning or organizing of the offense, is supported by all the aforementioned factors but especially Anaya's admission that she came up with the plan to defraud. Finally, factor (7), the degree of control and authority exercised over others, is evidenced by Anaya's issuing instructions to Smith (which Smith followed) to open the checking account and to lie to investigators. In short, based on these facts of record the district court's determination that Anaya was the leader or organizer was not clearly erroneous or without foundation but rather amply supported by the facts Anaya admitted and those contained in the PSR.[2]

### B. UNFAIR SURPRISE

Finally, Anaya contends that the district court's use of Smith's sentencing hearing testimony, without notifying Anaya in advance that it would be considered, constituted "unfair surprise" and therefore denied Anaya her due process right to rebut information which adversely affected her sentence. In a related way, Anaya argues that the court's failure to sentence Anaya and Smith at a single proceeding also violated her due process rights.

---

**2.** The sentencing court was entitled to rely on the factual information contained in the PSR because Anaya did not challenge the factual accuracy of the PSR in her sentencing memorandum. *United States v. Ivory,* 11 F.3d 1411, 1413–14 (7th Cir.1993) (challenge solely to opinions contained in PSR does not preserve objection to factual statements on which the contested opin-

ions are based) (citing *United States v. Spears,* 965 F.2d 262, 273 (7th Cir.1992); *United States v. Musa,* 946 F.2d 1297, 1308 (7th Cir.1991)); *see also United States v. Herrera,* 878 F.2d 997, 1000 (quoting *United States v. Mejia–Orosco,* 867 F.2d 216, 220–21 (5th Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989)).

To begin with, there is no requirement for simultaneous sentencing of co-defendants. Sentence scheduling is within the absolute discretion of the district judge. It is true that if a judge intends to base a sentencing adjustment on evidence presented during a proceeding to which the defendant was not party, the judge should give notice to the defendant in advance and provide him an opportunity to read the transcript of the proceeding. *United States v. Morales*, 994 F.2d 386, 389 (7th Cir.1993). However, Anaya's counsel did not object to or ask for a continuance when it became apparent that the sentencing court was making reference to such a proceeding. This was a waiver of the unfair surprise claim which only a showing of plain error can overcome. *Id.* at 390.

More fundamentally, Anaya's composite due process claim does not succeed because she did not demonstrate that the information derived from Smith's sentencing hearing was unreliable, and because she failed to establish to what extent the court relied on it. A defendant "does not possess a constitutional right to cross-examine a person who provided the government with information that was later used during sentencing." *United States v. Smith*, 3 F.3d 1088, 1100 (7th Cir.1993) (quoting *United States v. Badger*, 983 F.2d 1443, 1459 (7th Cir.) *cert. denied*, —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993)). Instead all that due process requires is that a defendant "be sentenced on the basis of reasonably reliable information." *Smith*, 3 F.3d at 1100 (quoting *United States v. Campbell*, 985 F.2d 341, 348 (7th Cir.1993). To successfully challenge her sentence the defendant must show "that the information before the court was inaccurate, and that the court relied on it." *Smith*, 3 F.3d at 1100 (7th Cir.1993) (quoting *United States v. Johnson*, 997 F.2d 248, 254 (7th Cir.1993)); *see also United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir.1992) (citing *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir.1991)).

We need not decide to what extent the district court relied on Smith's statements, because Anaya has not shown that such information, however it was used, was inaccurate. At best Anaya argues that Smith had a motive to shift the blame from herself to Anaya and that the court's decision to hold separate sentencing hearings prevented her from being able to effectively rebut Smith's characterization of Anaya as the leader of the enterprise. That argument notwithstanding, the record corroborates rather than undermines Smith's statements about Anaya being the leader of the enterprise. In fact, Anaya admitted that the scheme was her idea and that she instructed Smith to lie in order to cover up the crime. The corroborated statements discussed above were reasonably reliable and their use did not violate Anaya's due process rights. Further, a sentencing judge's credibility determinations are given great deference and only reviewed for an abuse of discretion. *United States v. Smith*, 3 F.3d 1088, 1100 (7th Cir. 1993) (citing *United States v. Campbell*, 985 F.2d 341, 348 (7th Cir.1993)). Given that Anaya fails to offer any direct evidence which would call into question the accuracy of Smith's statements, the judge did not abuse his discretion by finding Smith's testimony credible. Moreover, the facts admitted by Anaya and contained in the PSR by themselves are sufficient to establish that Anaya was the leader of the criminal activity. Thus, other evidence (the PSR and Anaya's own admissions) provides an adequate basis for applying the § 3B1.1(c) adjustment.

## III. CONCLUSION

For these reasons, the district court's sentencing determination was not clearly erroneous or without foundation, and the sentence of Nitza Anaya is AFFIRMED.