**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marvin Dexter LINNEAR, Defendant–Appellant.**

No. 94–1689.

United States Court of Appeals, Seventh Circuit.

Submitted * Sept. 9, 1994.

Decided Nov. 16, 1994.

* This case was submitted to the panel on the briefs after the parties' joint motion to waive oral argu-

ment was granted.

Rodney Cubbie (submitted), Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Richard H. Hart, Milwaukee, WI, for defendant-appellant.

Before BAUER, and FLAUM, Circuit Judges, and FOREMAN, District Judge.**

FOREMAN, District Judge.

Appellant Marvin Dexter Linnear challenges the thirty-year prison term he received after he pled guilty in a cocaine conspiracy. Because we find that the district court correctly calculated the appellant's sentence under the federal Sentencing Guidelines, we affirm the sentence.

## I.  BACKGROUND

The appellant was charged in a three-count indictment which alleged that Linnear and other members of a Los Angeles gang known as the East Coast Crips had conspired to operate various drug houses in Milwaukee, Wisconsin, with drugs shipped in from California. Linnear pled guilty to conspiracy to possess with intent to distribute in excess of five kilograms of cocaine. Based upon the plea agreement, the government dismissed a second count charging Linnear with conspiracy to possess with intent to distribute heroin. He was not charged in the third count.

The plea agreement stipulated that for purposes of the Sentencing Guidelines, Linnear's relevant conduct was five to fifteen kilograms of cocaine. Accordingly, the dis-

** Hon. James L. Foreman, of the Southern Dis-  trict of Illinois, is sitting by designation.

trict court found that Linnear's base offense level was 32. The court further found that Linnear qualified for several sentencing enhancements, including a two-level enhancement for possession of a dangerous weapon during the offense; a three-level enhancement for his role in the offense as a manager or supervisor in a criminal activity involving five or more participants; and a two-level enhancement for obstruction of justice. The court rejected Linnear's request for a reduction based upon acceptance of responsibility.

Linnear's criminal history included convictions for robbery (arrest on July 13, 1984, with sentencing on August 20, 1984); sale of a controlled substance (arrest on April 16, 1986, with sentencing on June 12, 1986); felon in possession of a firearm (arrest on February 12, 1990, with sentencing on March 19, 1992); felon in possession of a firearm (arrest on August 23, 1990, with sentencing on March 19, 1992); and possession of marijuana for sale (arrest on September 20, 1990, with sentencing on March 19, 1992). Linnear received two criminal history points for the 1984 robbery, two points for the 1986 drug charge and three points for each of the remaining convictions. The total of 13 points established a criminal history category of VI.

Linnear attempted to argue that the latter three convictions should be computed as a related offense under Guidelines section 4A1.2(a)(2), which would have given him a total of three points for these convictions rather than nine. Under this calculation, he would have had a grand total of seven points and a criminal history category of IV. The district court rejected this argument, finding that the three convictions had not been consolidated for sentencing, as required under section 4A1.2, Application Note 3. The court noted, however, that this finding was immaterial because Linnear qualified as a career offender under Guidelines section 4B1.1, which provides that "[a] career offender's criminal history category in every case shall be Category VI." Thus Linnear's criminal history category would be VI in any event.

Based upon the total offense level of 39[1] and criminal history category VI, Linnear was subject to a Guidelines range of 360 months to life in prison. The district judge sentenced Linnear to 360 months, with five years of supervised release, a $3,000 fine and a $50 special assessment. The pending appeal challenges the factual basis for the sentencing enhancements as well as the district court's determination that Linnear qualified for career offender status.

## II. ANALYSIS

We review a sentencing court's factual findings under the Sentencing Guidelines under a clearly erroneous standard. *United States v. Delgado*, 936 F.2d 303, 306 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). However, where the district court's decision involves an interpretation of the scope of the Guidelines, it is a question of law that is reviewed *de novo*. *United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir.1990).

### A. Factual Basis for Sentencing Enhancements

■■■ The appellant argues that the district court lacked sufficient evidence for its factual findings on the sentencing enhancements. The Guidelines require that a district court's factual findings be supported by a preponderance of the evidence. *See United States v. Corbin*, 998 F.2d 1377, 1387 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994). The court may rely upon hearsay evidence at the sentencing hearing, but only if such evidence

1. The career offender provision establishes an offense level of 37 for crimes carrying a maximum prison term of life in prison, as is the case here. United States Sentencing Commission, *Guidelines Manual* § 4B1.1. However, this offense level applies only if it "is greater than the offense level otherwise applicable...." *Id.* Based upon the base offense level of 32 with enhancements for use of a dangerous weapon, obstruction of justice, and a supervisory role in the offense, the district court calculated Linnear's total offense level at 39. Section 4B1.1 provides that this higher figure be used instead of the presumptive level 37 that would otherwise be applicable under § 4B1.1.

is "reliable" and the defendant has "a reasonable opportunity to rebut [the] contested hearsay . . . ." *United States v. Johnson,* 997 F.2d 248, 254 (7th Cir.1993).

■ As a preliminary matter, the Court notes that some of the evidence that the district judge considered at sentencing came from the trial of other members of the conspiracy to which Linnear pled guilty. Linnear's counsel objected on the grounds that his client was not a party to that trial and the witnesses were not available at the sentencing hearing for cross-examination. Sentencing Tr. at 30–31. The appellant's brief attempts to renew the objection on appeal but provides no authority that would bar a district court from considering pertinent evidence that was presented at a separate proceeding.

To the contrary, this court and others have recognized that evidence presented in another proceeding may be used to determine a defendant's sentence—so long as the defendant has an opportunity "to rebut the evidence or generally cast doubt upon its reliability . . . ." *United States v. Coonce,* 961 F.2d 1268, 1281 (7th Cir.1992); *United States v. Ramirez,* 963 F.2d 693, 708 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 388, 121 L.Ed.2d 296 (1992); *United States v. Ponder,* 963 F.2d 1506, 1508 (11th Cir.1992); *United States v. Castellanos,* 904 F.2d 1490, 1496 (11th Cir.1990); *United States v. Beaulieu,* 893 F.2d 1177, 1180–81 (10th Cir.), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). Those procedural safeguards were followed here. Linnear's presentence report put him on notice of the facts that the district court would consider in relation to the sentence enhancements. In response to Linnear's objections to the presentence report, the district court stated that the factual findings were supported by testimony presented in the trial of Linnear's co-conspirators. Linnear then had an opportunity to rebut the evidence or to challenge its reliability.

Having given Linnear this opportunity, the district court was free to consider the evidence that it determined to be reliable. Therefore, we turn to Linnear's challenges to the reliability of specific items of evidence.

### 1. Enhancement for Possession of a Dangerous Weapon

The appellant argues that the district court erred in enhancing his sentence under section 2D1.1(b)(1) of the Guidelines, which provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels." United States Sentencing Commission, *Guidelines Manual* § 2D1.1(b)(1). The Guidelines commentary states that this enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* § 2D1.1(b)(2) comment. (n. 3).

The district court's finding on this issue was based upon testimony from Charles Shaw, the government's key witness in the prior trial involving Linnear's co-conspirators. Shaw asserted that he had walked into a residence where Linnear was packaging two kilograms of cocaine and that Linnear pulled a handgun on Shaw but put it away when he recognized him.

■ Linnear contends that the district court should not have relied upon Shaw's statements because defense counsel had cast doubt on Shaw's credibility by showing that he had been given immunity from prosecution, that he had gotten out of problems with law enforcement officials when government agents intervened on his behalf, and that he was less than accurate on his facts. The appellant argues that there is no corroboration for Shaw's testimony from any source and, therefore, the finding regarding the gun was not supported by a preponderance of the evidence.

This circuit, however, "has never held that corroboration is essential in sentencing." *United States v. Atkin,* 29 F.3d 267, 268 (7th Cir.1994). "[C]orroboration is a step toward, but no guarantee of, reliability. Sometimes the corroboration is illusory; sometimes hearsay is rock solid without corroboration." *Id.* In this case, the district judge had an opportunity to observe Shaw testify in the earlier proceeding and to consider his testimony in the context of all of the evidence

regarding the conspiracy.[2] Because Shaw's statements regarding other aspects of the conspiracy were corroborated by other witnesses, the district court could properly find that his testimony regarding the gun was also reliable despite the fact that it was uncorroborated.

■ Although Shaw has received certain benefits for testifying for the government, that fact alone does not render his testimony unreliable. "[W]e have made clear on several occasions that at sentencing the 'testimony of one witness, even one arguably biased against the defendant, is sufficient to support a finding of fact.'" *United States v. Lindsey*, 30 F.3d 68, 70–71 (7th Cir.1994) (quoting *United States v. Cedano–Rojas*, 999 F.2d 1175, 1180 (7th Cir.1993)). "[S]o long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence." *United States v. Lueddeke*, 908 F.2d 230, 234 (7th Cir.1990) (quoting *United States v. Miller*, 891 F.2d 1265, 1270 (7th Cir.1989)).

Linnear's attempts to portray Shaw's testimony as inaccurate are unpersuasive. Linnear first points to Shaw's statement that Linnear had paid him $500 for various dealings and that Linnear had given him $500 within a few days after August 25, 1990. Linnear argues that the statement is untrue because jail and court records show that Linnear was arrested on August 23, 1990, and not released until August 29, 1990. Thus he contends that he could not possibly have made the payment at the time described by Shaw. However, Shaw's statement was not that the payment was made *on* August 25, 1990; rather, he stated that the transaction occurred *a few days after* that date. If the payment was made soon after Linnear's release on bond, that transaction would still be within a few days after August 25, 1990.

Thus, the jail records do not refute Shaw's testimony.

■ Linnear also argues that Shaw incorrectly stated that Linnear had operated a drug house at 12th and Center street in Milwaukee. During the sentencing hearing, the government conceded that Shaw was not the actual operator of the house. However, Linnear admitted that he supplied drugs to the person who did operate the house. In short, Shaw's characterization of Linnear's involvement was not entirely accurate. However, this minor discrepancy does not undermine the overall reliability of Shaw's testimony linking Linnear to the drug house—much less the reliability of his testimony regarding Linnear's possession of a gun.

Significantly, Linnear failed to present any evidence or testimony on this issue other than his own statement denying that he had a gun as alleged by Shaw. Although the district court characterized the witnesses as "two liars," the court ultimately determined that Shaw was more credible. The district court indicated that it was familiar with Shaw, having heard him testify in the previous case. The court further found that Linnear's credibility was nil because he had written a letter to a potential witness which the court construed as an attempt to suborn perjury.[3]

"Special deference must be accorded to the lower court's credibility determinations because 'only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" *United States v. Hamm*, 13 F.3d 1126, 1129–30 (7th Cir.1994) (quoting *Matter of Weber*, 892 F.2d 534, 538 (7th Cir.1989)). Based upon the trial court's observation of the witnesses and its knowledge of the conspiracy as a whole, we cannot say that the court's credibility determination in favor of Shaw was clearly erroneous.

---

**2.** The record suggests, for example, that the house where Shaw says he encountered Linnear with the gun was occupied by a coconspirator, Carolyn Ward, and that drugs were distributed out of that location. The record also indicates that several handguns were recovered from various other members of the conspiracy. This evidence does not directly corroborate Shaw's statement that Linnear himself possessed a gun, but shows that Shaw's statement is consistent with the other evidence in the case.

**3.** The district court's finding with respect to this letter is discussed in more detail below.

## 2. Defendant's Role in the Offense

■ The appellant argues that the district court erred in enhancing his sentence for his role in the offense pursuant to Guidelines section 3B1.1(b), which provides for a three-level increase "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive...." U.S.S.G. § 3B1.1(b). Under the terms of the plea agreement, the government made no recommendation regarding an enhancement under this provision at the time of sentencing, but argues on appeal that the district court's decision is amply supported by the record.

In finding that the enhancement was warranted, the district court relied upon Alcohol, Tobacco and Firearms Agent Scott Perala's statement that Linnear had supervised seven individuals in the conspiracy. Linnear denied the allegation and argues that there is no corroborating evidence to support Perala's statement. Thus, Linnear contends that Perala's allegation cannot be shown to be reliable.

The district court, however, found that Perala's statement was supported by the totality of evidence presented at the sentencing hearing and at the prior trial involving the co-conspirators. As the district judge observed: "[T]he testimony is replete with references to his role in terms of supplying, in terms of directing, in terms of paying, and I am also satisfied that he was a leader of the 118th Street East Coast Crips and that he remained in charge of the conspiracy as an ultimate leader even though he was incarcerated in California." Sentencing Tr. at 45.

Linnear made no attempt to rebut or otherwise challenge the reliability of the evidence presented during the prior trial. Accordingly, we find that the district court's finding regarding Linnear's role in the offense is not clearly erroneous.

## 3. Obstruction of Justice

Guidelines section 3C1.1 provides for a two-level increase in a defendant's base offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." U.S.S.G. § 3C1.1. The district court found this enhancement applicable based upon allegations that (1) Linnear sent a letter soliciting false testimony from potential witness Brandon Arnold, a Crip gang member who was incarcerated in a California prison for murder; and (2) Linnear attempted to escape from the Waukesha County Jail while being detained there pending trial.

■ Linnear argues that there was insufficient evidence to support either factual finding. He admits that he wrote the letter to Arnold and that he was trying to prepare Arnold for his anticipated testimony. However, he contends that the district court overreacted in viewing the letter as an attempt to solicit perjury.

To the contrary, even a cursory review of the document indicates that the district court's assessment was not clearly erroneous. For example, the letter states that "I am tring [sic] to put this move in motion and I need you to throw down with me in this move that I am tring [sic] to Orchestrate." It then goes on to give Arnold detailed instructions as to how he should testify when asked various questions about Linnear and other aspects of the drug conspiracy. The letter then states that "if this shit go through right, then I can get up out of here. And if I do, I will make sure you get up out of there you know. Even If I have to go and find that fool that lived on Imperial and give him $20,000 to change his whole story, and say that homicide told him to say that shit, you know." .

Linnear contends that the letter cannot constitute obstruction of justice because Arnold never testified in the case and, therefore, did not commit perjury. The appellant, however, fails to recognize that section 3C1.1 of the Guidelines clearly punishes "*attempts* to obstruct justice as well as actual obstruction of justice." *United States v. Caicedo,* 937 F.2d 1227, 1235 (7th Cir.1991) (quoting *United States v. Gaddy,* 909 F.2d 196, 199 (7th Cir.1990) (emphasis in original) (internal quotation marks omitted)).

■ As for the escape attempt, the government made an offer of proof that during a shakedown at the jail, a jailer saw Linnear throw a toothbrush box in a garbage can in his cell. The box was retrieved, and authorities found a hacksaw blade inside. Further investigation revealed a metal heating grate at the back of Linnear's cell had been hacksawed on all soldering joints.

Linnear denied being involved in any escape attempt but declined further comment because of possible criminal prosecution and failed to present any other evidence to rebut the government's allegation. In fact, Linnear's counsel stated that he had no basis to contest the government's offer of proof. His only argument is that the government's evidence, while suggestive, was not sufficient for the court to find by a preponderance of the evidence that Linnear was engaged in an escape attempt. Based upon the government's offer of proof, however, we find that the district court's conclusion was not clearly erroneous.

The Guidelines commentary states that the obstruction enhancement is warranted for "committing, suborning, or attempting to suborn perjury" and "escaping or attempting to escape from custody before trial or sentencing...." U.S.S.G. § 3C1.1 comment. (n. 3(b), (e)). Having found that Linnear engaged in both types of conduct, the district court correctly assessed a two-level enhancement against Linnear under this provision.

## 4. Acceptance of Responsibility

The appellant argues that he should have been given credit for acceptance of responsibility under Guidelines section 3E1.1. The district court, however, denied the reduction based upon allegations that Linnear tried to minimize his involvement in the conspiracy and tried to escape from custody.[4]

■ At the outset we note that Linnear objected to the reference to the escape attempt in this section of his presentence report because he was already subject to an enhancement under section 3C1.1 for this

conduct. The Guidelines commentary suggests that there is some merit to this argument. See U.S.S.G. § 3E1.1 comment. (n. 4) ("Conduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."). But the appellant did not argue the issue in his brief on appeal and, therefore, has waived it.

Moreover, we find ample support for the district court's conclusion that Linnear attempted to minimize his role in the offense. As discussed above, the district court found that Linnear falsely denied possessing a gun while engaged in a drug offense and falsely denied that he had a supervisory role in the organization. The district court also rejected other meritless objections Linnear raised to the presentence report's description of his conduct in the conspiracy.

"[A] defendant who falsely denies ... relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." United States v. Rosalez–Cortez, 19 F.3d 1210, 1219 (7th Cir.1994) (quoting U.S.S.G. § 3E1.1, comment. (n. 1(a))). We find, therefore, that the district court was not clearly erroneous in concluding that the defendant had attempted to minimize his role and was not entitled to a reduction for acceptance of responsibility.

## B. Application of the Career Offender Provision

The appellant contends that the district court erred in applying the career offender provision in section 4B1.1 of the Sentencing Guidelines, which states that:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony

---

4. The presentence report also referred to an alleged attempt by Linnear to get fellow inmates to help assault a guard at the county jail. The district court did not consider this allegation in making its determination.

convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1.

■ The appellant first challenges the fact that the Guidelines commentary states that the term "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* § 4B1.2 comment. (n. 1). The appellant cites the case of *United States v. Price,* 990 F.2d 1367 (D.C.Cir.1993), for the proposition that the Sentencing Commission exceeded its authority by including conspiracy within the statutory definition of a controlled substance offense. However, another panel of this court very recently rejected *Price* and followed several other circuits in holding that the Sentencing Commission did in fact have authority to include conspiracy offenses under the career offender provision. *United States v. Damerville,* 27 F.3d 254, 256–57 (7th Cir.1994). Linnear has given us no reason to reconsider the well-reasoned decision in *Damerville.* We, therefore, find that section 4B1.1 applies to Linnear's conspiracy conviction.

■ The appellant next argues that he lacks the requisite prior felony convictions to qualify as a career offender. He acknowledges that his criminal history includes two adult[5] felonies involving controlled substances: the April 1986 sale of narcotic controlled substance and the September 1990 possession of marijuana for sale. However, he contends that only the first of those convictions occurred prior to the instant offense. This argument is based upon the fact that the indictment for the pending offense charged that the conspiracy existed from January 1, 1988, to August 25, 1992. Linnear argues that he was not sentenced for

the 1990 offense until March 1992. Thus, in his view, his only "prior" conviction was on the 1986 charge.

This argument fails to recognize that section 4A1.2(a)(1)[6] defines the term "prior offense" to mean "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendre, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). The Guidelines commentary further states that "[a] sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." *Id.* § 4A1.2, comment. (n. 1). Linnear has presented no evidence that his conviction on the 1990 offense was in any way related to his conviction in the instant case. Thus, by the terms of section 4A1.2(a)(1) and its application notes, the appellant's argument must fail.

■ The appellant also argues that his 1990 drug conviction and the convictions on the two 1990 firearms charges should be counted as one offense because they were consolidated for plea and sentencing on March 19, 1992. This argument has no bearing on Linnear's status as a career offender, however, because Linnear would have the requisite two felonies even if the 1990 offenses were considered as one offense.[7] His argument could have a bearing on the calculation of his criminal history category under § 4A1.1. But as the district court pointed out, this calculation would be immaterial because the career offender provision establishes a mandatory criminal history category of VI. *See* § 4B1.1. Thus, even if Linnear's criminal history category was IV under

---

5. The Guidelines commentary states that the term " 'prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2 comment. (n. 3).

6. The application notes state that the provisions of § 4A1.2 "are applicable for the counting of convictions under § 4B1.1." U.S.S.G. § 4B1.2, comment. (n. 4).

7. In fact, the firearms convictions do not constitute an applicable felony under the career offender provision because § 4B1.1 refers to prior felony convictions for "either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. The application notes state that the term " 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." *Id.* § 4B1.2 comment. (n. 2).

§ 4A1.1, that determination would be superseded by the category VI mandated by § 4B1.1.[8]

In sum, we conclude that the district court correctly calculated Linnear's criminal history category at VI regardless of whether it is determined under the criminal history provisions of § 4A1.1 or under the career offender provision in § 4B1.1.

### III. CONCLUSION

For the foregoing reasons, appellant Marvin Dexter Linnear's thirty-year sentence is hereby

AFFIRMED.

---

**8.** Linnear's argument is without merit in any event. Guidelines section 4A1.2(a)(2) provides that "[p]rior sentences imposed in *related* cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." *Id.* § 4A1.2(a)(2) (emphasis added). The Guidelines commentary explains that "prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." *Id.* § 4A1.2, comment (n. 3). However, the commentary explicitly states that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." *Id.* Thus, even assuming that Linnear's 1990 charges were consolidated for plea and sentencing, they cannot be considered as related offenses because they were separated by intervening arrests.