**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Henry HARRIS, Defendant–Appellant.**

No. 94–2478.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1995.

Decided June 12, 1995.

William R. Hogan, Asst. U.S. Atty., Charles Ex (argued), Office of the U.S. Atty., Crim. Div., and Barry Rand Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Kathleen T. Zellner, Daniel F. DeLay (argued), and Michael Hemstreet, Zellner & Associates, Naperville, IL, for defendant-appellant.

Before KANNE and ROVNER, Circuit Judges, and SHABAZ, District Judge.*

ILONA DIAMOND ROVNER, Circuit Judge.

After his arrest for murder on July 11, 1988, El Rukn street gang member Henry Harris agreed to assist the government in its investigation of that criminal enterprise. Named in one of the resulting indictments, Harris pled guilty in exchange for the government's agreement to request that he be sentenced based on a range of twenty years to life imprisonment.[1] Harris subsequently assisted the government by helping to translate tape-recorded conversations conducted in code between various El Rukn defendants and by testifying at the trials of those defendants.[2] With the assistance of Harris and others, the government initially was successful in its prosecution of the El Rukns, convicting nearly all the indicted defendants.

Harris' assistance to the government, however, like that of the other government witnesses, was ultimately a double-edged sword. The by now well-publicized unraveling of the El Rukn convictions began when several of the convicted defendants filed post-trial motions alleging that the government was aware but did not inform the defense that Harris and other government witnesses had used illicit drugs during the period that they were assisting the government and incarcerated in the Metropolitan Correction Center ("MCC") in Chicago. Judges James F. Holderman, Suzanne B. Conlon and Marvin E. Aspen of the Northern District of Illinois each conducted lengthy evidentiary hearings on those motions, hearing testimony from 37, 24 and 29 witnesses respectively. Along with a broad range of government misconduct, the evidence revealed that Harris had indeed used illicit drugs during the period of his incarceration at the MCC. It also indicated that he may have provided untruthful testimony when asked about his drug use during that period. In the end, each of the judges granted the defendants' motions for new trials.[3] This appeal involves Harris' sentence,

---

* The Honorable John C. Shabaz, of the United States District Court for the Western District of Wisconsin, sitting by designation.

1. Harris pled guilty to charges of violating RICO and conspiring to violate RICO. The predicate acts underlying the RICO offenses included conspiracy and attempt to commit several murders, and narcotics distribution. Harris also pled guilty to travelling in interstate commerce as part of a "murder-for-hire" plot.

2. At Harris' sentencing hearing, the government described him as "a very important witness" who provided "lengthy" and "very wide-ranging" testimony at the seven El Rukn trials. (June 13, 1994 Tr. at 12.) It also estimated that he spent thousands of hours helping to decipher and decode the tape-recorded conversations. (*Id.* at 13.)

3. Judge Aspen's findings are detailed in an 89-page opinion, *United States v. Boyd*, found at 833 F.Supp. 1277 (N.D.Ill.1993). We recently af-

which was based in part on the evidence adduced at the post-trial hearings of his co-defendants. Harris contends that the district court's reliance on that evidence violated his right to due process.

At Harris' sentencing, the government requested a sentence within the range of 20 years to life imprisonment, in accordance with the parties' plea agreement. Judge Aspen sentenced Harris to a total of 30 years on the three counts to which he had pled guilty.[4] Judge Aspen made clear that the collapse of the El Rukn convictions, and thus the evidence adduced at the post-trial hearings, was central to his choice of this sentence:

> If Mr. Harris had done all the things that he was supposed to do, that is testify completely, cooperate with the government as a man who had seen the light and wanted to do something right, Mr. Harris should properly receive a sentence at the very bottom of the proposed sentencing range.

(June 13, 1994 Hearing at 25.). But, Judge Aspen explained:

> The reality of the situation, the bottom line, if you will, is that Mr. Harris, through some fault of his own but perhaps greater fault of others, through perjury, at the trial for sure, perhaps at the post-trial proceedings, through conspiracy—and I don't use that in the criminal sense, but certainly a tacit conspiracy to keep matters that should have been brought to the attention of the defense and to this Court as well away from others, has contributed to the complete undermining of these cases. So one can't look back at these cases and say that Mr. Harris has played a role that has in any way benefitted society.

(*Id.* at 24.)

■ Harris now contends that the district court deprived him of due process when it sentenced him on the basis of evidence adduced at the three post-trial hearings, because although Harris testified at those hearings, he was not a party to them, and thus had no opportunity to cross-examine witnesses or present additional evidence. Because of his lack of representation at those hearings, Harris argues, he was deprived of an opportunity to rebut the evidence on which his sentence was based.

■ True, due process requires that a defendant be afforded an opportunity to rebut evidence from another proceeding that is relied upon in his sentencing. *United States v. Johnson,* 997 F.2d 248, 254 (7th Cir.1993); *United States v. Coonce,* 961 F.2d 1268, 1281 (7th Cir.1992). But Harris was not deprived of that opportunity. Although the evidence was originally adduced at the post-trial hearings of his co-defendants, Harris nonetheless received notice, by way of the presentence investigation report ("PSI"), that the evidence would be used in his sentencing. Attached to the PSI was the Government's Version of the Offense, which included the facts adduced at the post-trial hearings as well as the findings of Judges Aspen, Conlon and Holderman regarding Harris' possession and use of illicit drugs during the period of his incarceration at the MCC. With this notice, Harris had an adequate opportunity to rebut the evidence adduced at the post-trial hearings. He could have requested an opportunity to present any evidence or witnesses at his sentencing hearing that would have cast doubt on the evidence, but did not do so. Indeed, when Harris' counsel was asked whether he wished to make any additions or corrections to the PSI, he indicated that he did not. (June 13, 1994 Tr. at 3.)

This procedure met constitutional requirements. As we have previously noted, "evidence presented in another proceeding may be used to determine a defendant's sentence—so long as the defendant has an opportunity 'to rebut the evidence or generally cast doubt upon its reliability....' " *United States v. Linnear,* 40 F.3d 215, 219 (7th Cir.1994) (quoting *Coonce,* 961 F.2d at 1281);

firmed Judge Aspen's decision to grant a new trial in *United States v. Boyd,* 55 F.3d 239 (7th Cir.1995).

4. Because Harris was convicted of crimes committed before November 1, 1987, the effective date of the United States Sentencing Guidelines, the Guidelines did not apply to his case. *United States v. Morgano,* 39 F.3d 1358, 1366 (7th Cir. 1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 2559, 132 L.Ed.2d 813 (1995); *United States v. Simpson,* 8 F.3d 546, 547 (7th Cir.1993).

see also *United States v. Anaya,* 32 F.3d 308, 314 (7th Cir.1994); *United States v. Morales,* 994 F.2d 386, 389 (7th Cir.1993). Just as in this case, the defendant in *Linnear* had been notified of the facts upon which the district court would base its sentence via the presentence report. Linnear then had an opportunity to either rebut or challenge the reliability of the evidence relied upon but did not do so. We found that this opportunity satisfied the requirements of due process. *Id.* Moreover, as we held in *Anaya,* before a defendant may establish a due process violation in this context, he must demonstrate that the information derived from the separate proceeding was inaccurate. 32 F.3d at 314. Harris has failed to make any such showing.

Harris was on notice that the evidence adduced at the post-trial hearings of his codefendants would be used in determining his sentence. He had an opportunity to respond to that evidence either in writing or at his sentencing hearing, and he could have called any witnesses or presented any evidence that might have cast doubt on the evidence. Judge Aspen's reliance on this evidence therefore did not violate Harris' right to due process. Harris' sentence is AFFIRMED.