In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-2299

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHEILA GEARY,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:17-cr-169-2 — **Joseph S. Van Bokkelen**, *Judge.*

———————————

ARGUED FEBRUARY 26, 2020 — DECIDED MARCH 13, 2020

———————————

Before WOOD, *Chief Judge*, and ROVNER and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. This case is the culmination of a grotesque history of sexual abuse in the Geary household. Over a number of years, David Geary—Sheila Geary's husband—raped, sexually abused, and took pornographic photos of the Gearys' youngest daughter when she was between the ages of 5 and 8. During a period in which the couple hoped to "spice up their marriage," Sheila viewed the

pornographic photos that David took of their daughter—identified as "MF-2"—and also found other images of child pornography to share with David. In addition, Sheila kept the illicit photos of MF-2 on a thumb drive hidden behind a mirror in their home. She kept them, she said, in case "[s]hit hit the fan and [she] needed some proof."

Ultimately, David and Sheila were indicted as codefendants, and Sheila pleaded guilty to one count of possession of child pornography. She was sentenced to 57 months' imprisonment and 5 years' supervised release, and she was ordered to pay $55,600 in restitution jointly and severally with David. On appeal, she argues both that the district court incorrectly applied a Sentencing Guidelines provision that enhanced her recommended sentencing range and that the district court failed to adequately explain her restitution liability. We disagree with both arguments.

Sheila first argues that the district court erred when it determined her guidelines range. Generally, a defendant's offense level for possession of child pornography is determined under U.S.S.G. § 2G2.2. But that provision contains a cross reference that provides: "If the offense involved … permitting … a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct … apply § 2G2.1 … if the resulting offense level is greater than that determined [under this section]." U.S.S.G. § 2G2.2(c)(1). Section 2G2.1, which applies to various forms of the sexual exploitation of children, starts at a higher base level than § 2G2.2 and advises a two-level increase if the defendant was a parent who "permitt[ed]" her minor child to engage in sexually explicit conduct. *Id.* § 2G2.1(b)(5). Sheila argues that the district court should have calculated her guidelines range under § 2G2.2

rather than § 2G2.1. In other words, she concedes that she possessed the pornographic pictures of MF-2 but denies that she permitted David to take them.

Tragically for MF-2, the record contains ample evidence that Sheila "permitted" David to use their daughter for the production of child pornography. The facts found by the district court paint a ghastly picture: Sheila not only knew of her husband's interest in child pornography, she shared it—she and David would view child pornography together. Indeed, Sheila would procure pornographic photos of prepubescent girls for David to view. And when David expressed interest in pornographic photos of their daughter and asked Sheila if she would like pornographic pictures of MF-2, she responded affirmatively. Then, when David took photos of MF-2 and showed them to Sheila, Sheila's response was positive. Far from stopping David, her reaction further encouraged him. She had explicit knowledge that David had taken photos of MF-2 and did nothing to prevent him from doing so again.

Sheila protests that the district court should not have relied on David's testimony since he had reason to try to get back at her for reporting his abuse to the police—not only his abuse of MF-2, but also of their other children and Sheila herself. It is certainly true that district courts should tread lightly when taking the word of an abusive husband against that of his wife. The district court did just that here. It carefully parsed the portions of David's testimony that it viewed as credible from those that it discounted as incredible. Moreover, the district court did not rely on David's testimony alone—much of the evidence that Sheila permitted MF-2 to engage in explicit conduct came from Sheila's own admissions and the testimony of MF-2. Indeed, even without David's statements,

there was enough evidence to support the application of § 2G2.2.

While Sheila minimized her culpability for David's exploitation of MF-2, the district court determined that her version of events was self-interested revisionist history. For example, Sheila claimed that she confronted her husband about the photos of MF-2, but the district court found Sheila unconvincing on this count. Likewise, while Sheila claimed both a fear of her husband and a desire to protect her children, she never called the police to report child abuse. Instead, she only called the police in her own defense. And while Sheila cites as evidence of her good intentions her decision to turn the photos of MF-2 over to the police, she made that decision only after word of MF-2's abuse had already gotten out to Sheila's eldest daughter. Sheila only acted, as the district court put it, once "her own involvement would be revealed unless she acted first." In sum, the district court found that Sheila was a but-for cause of MF-2's abuse, because "[w]ithout her consent, MF-2 may have been spared." We see no clear error in these factual findings. *United States v. Shelton*, 905 F.3d 1026, 1031 (7th Cir. 2018) ("[W]e … review for clear error the factual determinations underlying the district court's application of the Guidelines." (citation omitted)).

Sheila insists that these findings do not justify the application of § 2G2.1 even if we leave them undisturbed. She is wrong. Sheila argues that she did not "permit" David to take photos of MF-2 because she did not "participate" or "assist" in taking the photos. But one need not "participate" or "assist" in an activity to "permit" it. On the contrary, one can permit something by simply "allow[ing]" or "tolerat[ing]" it—as Sheila did here. *See Permit*, WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY 1683 (1961). By declining to stop David or to take actions that would prevent his conduct, and with full knowledge of the results of her failure to act, Sheila "permitted" MF-2 to "engage in sexually explicit conduct" for the purpose of producing child pornography. And though we do not view this case as a close call, application of the cross-reference here is consistent with the instruction that § 2G2.2(c)(1) should "be construed broadly." U.S.S.G. § 2G2.2 cmt. n.7.

The district court was rightly cognizant that Sheila's involvement in David's exploitation of MF-2 was complicated by David's abuse of Sheila herself. Thus, while it calculated Sheila's guidelines range under § 2G2.1, it granted her a substantial downward departure to account for her secondary role in MF-2's abuse and the fact that she too was a victim. In the end, the district court sentenced Sheila to 57 months' imprisonment. That is the bottom of the advisory range that would have applied under § 2G2.2, which is the guideline that Sheila is asking for. The district court's variance from the Guidelines reflects its careful assessment of Sheila's particular circumstances.

Sheila also challenges the district court's imposition of restitution. Recall that the district court ordered Sheila to pay $55,600 in restitution to MF-2, for which she is jointly and severally liable with her husband David. On appeal, Sheila does not contend that she should not owe restitution, nor could she—the crime to which she pleaded guilty requires payment of restitution to any identifiable victims. *See* 18 U.S.C. § 2259. Instead, Sheila complains that the district court failed to adequately explain its calculation of the restitution amount.

But the district court was clear that the source of the $55,600 amount was the restitution calculation made in David's sentencing. That amount is the estimated cost of providing counseling and therapy to MF-2 to mitigate the trauma that she experienced at the hands of David and Sheila. The district court was entitled to rely on the evidence produced in David's sentencing, as Sheila's codefendant, so long as Sheila was afforded notice and an opportunity to rebut that evidence. *See United States v. Harris*, 56 F.3d 841, 843 (7th Cir. 1995). The inclusion of the restitution amount in Sheila's PSR was sufficient notice to her that David's restitution amount would be used in her sentencing. *See id.* She could have challenged the calculation of that amount, but she did not. There was no error, then, in relying on the calculation from David's sentencing to determine the amount of restitution that Sheila would owe. *See United States v. Pham*, 463 F.3d 1239, 1243–44 (11th Cir. 2006).

AFFIRMED