UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Manuel PINTO, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Edgar FLOREZ, Defendant–Appellant.

Nos. 94–50095, 94–50100.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1994.

Decided Jan. 30, 1995.

Errol H. Stambler, Morton H. Boren, Los Angeles, CA, for defendants-appellants.

Daniel P. Collins, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: CANBY, LEAVY, and T. NELSON, Circuit Judges.

LEAVY, Circuit Judge:

Defendants Jose Manuel Pinto ("Pinto") and Edgar Florez ("Florez") appeal from their sentences under the Sentencing Guidelines following their guilty pleas for conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Both defendants appeal denial of a downward departure under U.S.S.G. § 2D1.1, Application Note 16. Defendant Pinto also appeals denial of departure under § 5K2.12 and admission of evidence in his sentencing hearing without prior notice. We affirm.

## FACTS AND PRIOR PROCEEDINGS

On February 1, 1992, Pinto picked up a U–Haul trailer and, followed by Florez, drove to a stash house in Southern California. Pinto, Florez, and one other individual unloaded 50 large white bags containing cocaine from the U–Haul into the garage. On February 5th, 7th, and 14th, 1992, Pinto, using different vehicles originating from that garage, personally delivered a total of 738 kilograms of cocaine to various locations. On February 10th and 12th, Florez delivered a total of 200 kilograms of cocaine from the same location in a similar manner. On May 20, 1992, both Pinto and Florez were arrested.

Multi-count indictments alleging conspiracy, possession with intent to distribute, and distribution of cocaine were handed down against Pinto and Florez. Pinto and Florez each pleaded guilty to a conspiracy count pursuant to a written plea agreement. In exchange for their pleas, the government agreed to dismiss the remaining counts, and also to recommend two-level reductions in base offense levels for a minor role, and three-level reductions for acceptance of responsibility. The plea agreement, however, specifically reserved to the court the determination of the quantity of cocaine attributable to Florez and Pinto for sentencing purposes.

At Pinto's initial sentencing hearing on January 5, 1994, he argued that the court should grant a downward departure under U.S.S.G. § 2D1.1, Application Note 16. He argued that his base offense level overrepresented his culpability. Pinto also argued that he should be granted a downward departure under § 5K2.12 for imperfect duress. Judge John G. Davies denied a departure under § 5K2.12, the imperfect duress defense, but he requested further briefing on § 2D1.1, Application Note 16, and continued the sentencing until January 26, 1994. At the final sentencing hearing, Judge Davies reiterated his rejection of the § 5K2.12 departure and also declined to depart downward under § 2D1.1, Application Note 16. Pinto was sentenced to 168 months.

Florez also argued that he was entitled to a downward departure under Application Note 16. Judge Davies declined to grant Florez a downward departure and sentenced Florez to 168 months.

## ANALYSIS

### I. U.S.S.G. § 2D1.1, Application Note 16

#### A. Standard of Review

■ Both Pinto and Florez challenge the district court's interpretation of Application Note 16. That interpretation must be reviewed de novo. *United States v. Buenrostro–Torres,* 24 F.3d 1173, 1174 (9th Cir.1994).

#### B. Discussion

The issue is the proper relation between the three requirements which must be satisfied in order to grant a downward departure under § 2D1.1, Application Note 16:

Where (A) the amount of the controlled substance for which the defendant is accountable under § 1B1.3 (Relevant Con-

duct) results in a base offense level greater than 36, (B) the court finds that this offense level overrepresents the defendant's culpability in the criminal activity, and (C) the defendant qualifies for a mitigating role adjustment under § 3B1.2 (Mitigating Role), a downward departure may be warranted. The court may depart to a sentence no lower than the guideline range that would have resulted if the defendant's Chapter Two offense level had been offense level 36. *Provided,* that a defendant is not eligible for a downward departure under this provision if the defendant: ... (a)–(f).[1]

Defendants argue that the question of whether the base offense level referred to in clause (A) "overrepresents the defendant's culpability" is determined solely by whether or not the defendant qualifies for a mitigating role adjustment under § 3B1.2.[2] In their view, if the defendant qualifies for a minor role adjustment, he also qualifies for a downward departure from the base offense level.

The government argues, on the contrary, that "overrepresentation" of culpability for purposes of clause (B) requires consideration of the base offense level itself set by § 1B1.3. The court must determine whether the defendant's connection with the amount of controlled substance determining his base offense level "overrepresents" his culpability.[3] As the Government points out, the defendants' reading of Note 16 would make clause (B) irrelevant. For if "overrepresentation" were satisfied whenever a minor role adjustment was found, there would be no need for

a distinct determination of "overrepresentation."

■ The government is correct. The issue is whether the original base offense level, set by the amount of the controlled substance the defendant is "accountable" for under § 1B1.3, is commensurate with the defendant's involvement in the crime. Note 16, clause (a) refers specifically to the base offense level set by § 1B1.3, and clause (B) focuses on the distinction between "accountability" and "liability" envisioned by § 1B1.3: "The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability." Section 1B1.3, Commentary, Note 1.

Examples in the application notes following § 1B1.3 clearly indicate that a defendant can sometimes be held "accountable" for large amounts of controlled substance with which he may have little personal contact or involvement.[4] This is precisely the situation Note 16 was formulated to resolve. As Commentary to the 1993 Amendment adopting Note 16 states:

> Where a defendant's base offense is greater than level 36 and the defendant had a minimal or minor role in the offense (and meets certain other qualifications), the quantity of the controlled substance for which the defendant is held accountable under § 1B1.3 (Relevant Conduct) may overrepresent the defendant's culpability in the criminal activity.

U.S.S.G., App. C, no. 485 (1994).

■ Thus, § 2D1.1, Note 16, can be applied when the "accountability" principle of

---

1. While Note 16 contains additional conditions, i.e., 16(a)–(f), none of these are at issue in the present appeal.

2. Florez argues, for example: "A Defendant's 'Culpability' Is Over represented [sic] For Purposes of Subsection (B) of Application Note 16 Where the Defendant Has Been Deemed A Minor Participant Eligible For A Downward Departure Under Sentencing Guideline Section 3B1.1.... Appellant submits that the more likely intention of the Commission was that Note 16 will apply where the defendant: 1) had a minor role in the offense; and 2) is facing a sentence with a base offense level greater than 36 *due to the amount* of narcotics involved."

3. The government argues that, "[t]he Note was intended to address the situation in which, be-

cause of the breadth of the relevant-conduct rules in § 1B1.3, a defendant is held accountable for a very large amount of drugs to which he has little, if any, personal connection."

4. As the examples in the notes indicate a defendant's base offense level is sometimes determined by amounts of controlled substance which he is "accountable" for regardless of the "knowledge or lack of knowledge of the actual type or amount of that controlled substance." Section 1B1.3, Note 2.(ii)(a)(1). E.g., limited participation in off-loading of entire ship of controlled substances, or courier transport of significant quantities of controlled substance in a suitcase. *Id.*

§ 1B1.3 leads to a base offense level being set at a level quite high in relation to the knowledge and involvement of the defendant. When the district court determines that the amount of controlled substance the defendant is "accountable" for is disproportionate to the defendant's offense conduct, it may, subject to the other conditions of Application Note 16, depart downward and lower the base offense level as long as the court does not lower it below 36. The note permits a downward departure when the base offense level established by the relevant conduct is greater than justified by the culpability of the defendant. The relevant conduct may be his own conduct or the conduct of other conspirators that is imputed to the defendant as foreseeable.

The district court's holding was consistent with the language of the application note. The court correctly focused on the amounts of controlled substance in relation to the defendants' involvement and connection with those controlled substances (and the criminal activity in general) in determining whether culpability was "overrepresented."

 In this case the defendants were only charged at a level reflecting drugs that they actually transported or handled. If that established a base level higher than their culpability, the district court could depart downward. We conclude that the district court properly considered various equities and degrees of involvement before it declined to depart downward. Because the district

court did not err in its interpretation of Note 16, its discretionary denial[5] of a downward departure is not reviewable. *United States v. Morales*, 972 F.2d 1007, 1011 (9th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993).

## II. The Standard of Duress Under § 5K2.12 and Discretion to Depart Downward

### A. Standard of Review

This court reviews de novo the district court's interpretation of the sentencing guidelines and accepts its factual findings unless they are clearly erroneous. *United States v. Powell*, 6 F.3d 611, 612 (9th Cir. 1993).

### B. Discussion

Pinto argues that the court failed to apply the proper standard of duress under § 5K2.12[6] for purposes of determining whether he was entitled to a downward departure. Pinto asserts error because at the sentencing hearing the prosecution recommended that the court not grant a § 5K2.12 duress departure based on the defendant's inability to prove the elements required to prove *perfect* duress. The standard for a § 5K2.12 duress departure is *imperfect duress*, that is, duress which is not "a complete defense."[7]

---

5. For example, the trial judge stated in reference to Pinto, "I think that it's clear that I recognize that there is a discretion available. That I have chosen not to—for good reasons—not to exercise the discretion in favor of the defendant."

 In regard to Florez, the judge found that the evidence did not warrant application of Note 16. We have held that evidentiary determinations fall under the scope of unreviewable discretion. Although the court did not explicitly state that it was exercising its discretion, its language was comparable to that which we have found sufficient to demonstrate an exercise of discretion. *United States v. Gardner*, 988 F.2d 82, 84 (9th Cir.1993). Appellate jurisdiction exists to review a refusal to depart downward as long as "the refusal rested on the court's conclusion that it possessed no discretion, and not on the belief that exercise of its discretion was unwarranted." *United States v. Cantu*, 12 F.3d 1506, 1510 (9th Cir.1993).

6. "If the defendant committed the offense because of serious coercion, blackmail, or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range." U.S.S.G. § 5K2.12.

7. "Evidently the Commission had in mind the showing of duress less than what constitutes a defense to a crime; for if the defense were 'complete,' there would have been no crime requiring a sentence.... If the court should conclude that [the defendant] has not carried her burden of proving duress because her evidence of duress is not credible, it is still open to the court to consider whether there was duress that did not amount 'to a complete defense.'" *United States v. Johnson*, 956 F.2d 894, 898–99 (9th Cir.1992) (citation omitted).

■ There is, however, no indication that the trial judge failed to apply the proper standard of *imperfect* duress. First, the entire discussion of the duress issue began with Pinto's attorney explicitly pointing out to the court that the issue was "duress and coercion not amounting to a defense." Furthermore, as the prosecution notes, discussion of the elements of perfect duress are not irrelevant to the issue of imperfect duress. Finally, there is no indication that the judge's decision not to depart downward rested on application of the incorrect legal standard:

> The Court finds that the defendant has failed to sustain his burden in that respect, and has failed to demonstrate the existence of facts sufficient to support the claim for downward departure.... It does appear that there is a claim of coercion and pressure, but it's insufficient to rise to the level that would impel the Court to depart downwards ... or do anything to reduce the offense level in anyway.

■ We have held that decisions to deny downward departure will be considered discretionary unless the district court indicates that its refusal to depart rests on its view that it could not as a matter of law do so. "Because the court's decision not to depart did not appear to rest on the judge's belief that departure was prevented as a matter of law, we decline to review the decision." *United States v. Belden,* 957 F.2d 671, 676 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992). Since the judge's decision does not indicate that he believed he was prevented from departing downward as a matter of law, the decision is discretionary and thus not reviewable.[8]

### III. Admission of Evidence for Purposes of Determining Eligibility for Downward Departure

#### A. Standard of Review

■ The Guidelines provide: "In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information can be considered, so long as it has 'sufficient indicia of reliability to support its probable accuracy.'" U.S.S.G. § 6A1.3, comment. *United States v. Notrangelo,* 909 F.2d 363, 364–65 (9th Cir.1990). The district court's determination whether a particular item of evidence is sufficiently reliable to be considered at sentencing is reviewed under an abuse of discretion standard. *See United States v. Petty,* 982 F.2d 1365, 1369 (9th Cir.), *amended on other grounds,* 992 F.2d 1015 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994).

#### B. Discussion

Pinto objects to the judge's consideration at sentencing of three items of evidence that were not included either in the stipulation of facts in his plea agreement or in the sentencing report. The "facts" in question refer to two pieces of information which came out at the first sentencing hearing on January 6, 1994: (1) the heavy weight of the bags which Pinto unloaded from the U–Haul; and (2) the prosecution's reference to certain facts relating to Pinto's duress claim; (3) Pinto also objects to the sentencing judge's mentioning, at the final sentencing hearing on January 26, 1994, an *additional* delivery by Pinto which had not been noted in the plea agreement or presentence report. Testimony as to this additional delivery had been presented at a codefendant's trial over which the judge presided.

■ Pinto argues that consideration of these items at sentencing was improper since he was not given appropriate notice. The defendant has the right to know what evidence will be used against him at the sentencing hearing. *United States v. Ramirez Acosta,* 895 F.2d 597, 600–01 (9th Cir.1990).

---

8. Construing Pinto's claim as a challenge to the trial court's factual determination concerning duress, we find that the trial court's finding regarding the lack of credibility of the evidence supporting Pinto's claim of duress was not clearly erroneous. "[W]e shall give due regard to the opportunity of the district court to judge the credibility of the witnesses and ... due deference to the district court's application of the guidelines to the facts." *United States v. Sanchez,* 914 F.2d 1355, 1361 (9th Cir.1990), *cert. denied,* 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991).

*a) Items (1) and (3)—Downward Departure Under § 2D1.1, Note 16*

It is clear from the record that Items (1) and (3), that is, the weight of the bags and the number of deliveries were of primary relevance to the issue of whether Pinto would be granted a downward departure under § 2D1.1, Application Note 16. Pinto does not assert anywhere on appeal that either Items (1) or (3) are in fact false. Rather he argues only that since proper notice was not afforded him, he should be resentenced based only upon the stipulation of facts in his plea agreement and presentence report.

We have held that the notice requirement under the sentencing guidelines has been satisfied when evidence included in a codefendant's trial was included in the presentence report. *Notrangelo,* 909 F.2d at 365–66. In the present case, however, the facts were not included in the presentence report since the evidence from the codefendant's trial was not at that time available. The evidence was first introduced in the course of the sentencing hearings of January 5 and January 26, 1994.

We reject Pinto's argument for the following reasons:

First, the introduction of the evidence concerning the weight of the bags of cocaine relevant to the Note 16 issue was brought up at the January 5th hearing. The judge then postponed any ruling on the Note 16 downward departure until the January 26 hearing. Pinto had notice of Item (1) three weeks before the final sentencing hearing.

Item (3), however, is more problematic. The judge derived his knowledge of that additional *fourth* delivery from his own recollection of evidence presented at a codefendant's trial, and he mentioned it only at the close of the final sentencing hearing. In addition to noting Pinto's other three deliveries individually, the judge stated: "And on the 2nd of February, 1992, [Pinto] again involved himself in the business of the conspiracy, in what seems to be a vile activity, having listened to the evidence at trial." Shortly thereafter the judge denied the downward departure under § 2D1.1, Note 16.

The record indicates that in reference both to Items (1) and (3) the prosecution and judge made it sufficiently clear that the information came from the trial of Pinto's codefendants. Yet, Pinto made no objection to the items at the hearings, and on appeal he raises no objection to the content of these items. In view of the failure of defense counsel to object, the fact that the defendant does not challenge the truth of any of the matters, and because of the numerous other incidents relied upon by the sentencing court, we find no plain error.[9]

*b) Item (2)—Downward Departure Under § 5K2.12*

Pinto also argues that the prosecution's references to certain facts regarding Pinto's duress claim were error. Pinto argues that these references generally implicated Pinto to a deeper degree in the conspiracy or criminal activity. Pinto notes that shortly after mentioning these facts, the judge denied the § 5K2.12 duress departure.

Pinto's argument is meritless. It first assumes without any support in the record that the judge relied on these facts in denying a departure for duress. Second,

---

**9.** The issue before us is almost identical to that presented in *United States v. Morales,* 994 F.2d 386 (7th Cir.1993). The court of appeals reviewed a trial judge's decision to enhance the defendant's sentence on evidence he was aware of from the recent trial of the appellant's codefendants. While the Seventh Circuit noted that the judge should have warned the defendant he would use the evidence and given him a chance to respond, it held that the failure of the defense attorney to object or ask for a continuance at the sentencing hearing forfeited the defendant's right to appeal the issue. "As soon as the judge said that he was going to rely in part on the evidence at the trial, Morales' counsel should have objected or asked for a continuance to permit him to read the transcript. There was no such objection and request." *Id.* at 389–90.

Additionally, the Seventh Circuit noted that the appellant had made no objection on the basis of the information being misleading or false. Thus, the court of appeals held that even if there had been an error committed it would only have been harmless. "So far as appears, not only was any objection to the judge's use of the evidence at the trial waived, but any error in that use was harmless and therefore certainly not plain." *Id.* at 390.

even if the judge had considered these facts, it would tend to support, not undermine, Pinto's duress claim. Third, in view of the continuance of the sentencing hearing, Pinto *did* have notice and could have objected to these facts at the final hearing three weeks later.

For the reasons stated above, the sentences appealed from are AFFIRMED.