85 F.3d 638
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javier Reigos MANERA, Eliazar Reigos Manera, Ambrosio Pineda
Duque, Defendants-Appellants.
 Nos. 95-10063, 95-10071 and 95-10303.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 12, 1996.*
Decided April 15, 1996.
 
 Before: CHOY, BEEZER and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Consolidated before us are the appeals of three defendants convicted in a single jury trial: Javier Reigos Manera ("Javier"), Eliazar Reigos Manera ("Eliazar"), and Ambrosio Pineda Duque ("Ambrosio"). Appellants raise several challenges to their convictions and sentences. Eliazar contends the district court violated his Sixth Amendment right of confrontation by failing to exclude allegedly inculpatory statements by non-testifying co-defendants. He also contends there was insufficient evidence to support his conviction for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 846, and his conviction for attempt to manufacture methamphetamine and aiding and abetting that attempt under 21 U.S.C. §§ 841(a)(1) & 846 and 18 U.S.C. § 2. Javier contends there was insufficient evidence to support his conviction for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 846. He also claims his sentence violates the Eighth Amendment because it is harsher than that of a co-defendant, and argues that the district court should have granted him a downward departure under U.S.S.G. § 2D1.1. Ambrosio contends there was insufficient evidence to support his conviction for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 846, and his conviction for attempt to manufacture methamphetamine and aiding and abetting that attempt under 21 U.S.C. §§ 841(a)(1) & 846 and 18 U.S.C. § 2. He also argues the district court should have granted him a four-level reduction under U.S.S.G. § 3B1.2(a) for being a "minimal participant" in the offenses.
 
 
 3
 We have jurisdiction to review the convictions pursuant to 28 U.S.C. § 1291, and the validity of the sentencing decisions under 18 U.S.C. § 3742. For the reasons set forth below, we affirm the convictions of all appellants and affirm the district court's sentencing decisions.
 
 DISCUSSION
 
 4
 On February 7, 1994, California narcotics investigators received a tip from an informant that a methamphetamine laboratory was in operation at a residence in Pixley, California. Agents surveilled the house from midnight on February 7 to 5:30 a.m. on February 8.
 
 
 5
 Investigators stopped and searched the only vehicles to leave the property during the surveillance: a pickup truck and a Ford Granada sedan, which left the house in the early morning hours of February 8. All occupants of the vehicles were arrested. Ambrosio was a passenger in the pickup truck, while Eliazar and Javier were found in the Granada. At the time of arrest, Eliazar had a red stain on his pants consistent with red phosphorous, a chemical used to manufacture methamphetamine. In the truck were bed sheets, gloves, flashlights, and tools, while in the Granada were air respirators and butane tanks of a type typically used in methamphetamine labs. The Granada emitted a chemical odor.
 
 
 6
 Javier told investigators he had come to the Pixley residence merely to accompany his brother Eliazar. He said he had arrived before dark on February 7, and had slept in the car until his arrest. Ambrosio, a Mexican citizen, told investigators that a man in Tijuana had offered him a job, and driven him to California. He said he was driven to the Pixley property on the evening of February 7, where he awaited directions. Ambrosio said Eliazar gave him money and directed him to purchase distilled water, blenders, trash bags, and pancake turners, which he did. He also said he was told to grind up pills and did so. He said he thought drugs were being manufactured on the property, but claimed he didn't know what type.
 
 
 7
 At 6:30 a.m., investigators executed a search warrant at the Pixley property[1] and discovered a fully equipped methamphetamine laboratory. Investigators found that operators of the lab had been manufacturing hydriodic acid, a precursor chemical used in the manufacture of methamphetamine.[2] Discovered at the lab were four flasks containing hydriodic acid along with several chemicals necessary to the manufacture of methamphetamine: iodine, sodium thiosulfate, red phosphorous, ephedrine in both powdered and tablet form, caustic sodium hydroxide, hydriodic acid, freon, and acetone. Investigators also found butane and propane burners, as well as a 55-gallon drum containing methamphetamine and its by-products. Fingerprints belonging to Javier and Eliazar were found on unopened metal cans containing freon. Two of Ambrosio's fingerprints were found at the site, one on a five-gallon plastic water bottle, and one on a blender.
 
 
 8
 In addition to the evidence found in the vehicles and at the Pixley lab, the government introduced at trial documentation of appellants' purchases of chemicals and equipment used in the manufacture of methamphetamine.[3] Invoices from laboratory supply companies documented the following transactions: (1) Between September 1993 and January 1994, Javier bought a flask and heating mantle, as well as iodine, red phosphorous, and freon; (2) Between July 1992 and October 1993, Eliazar bought chemicals (freon, sodium hydroxide, sodium thiosulfide, and red phosphorous) and equipment (flasks, heating mantles, and thermostats); and (3) In 1990, Ambrosio bought freon, sodium hydroxide, red phosphorous, and hydrogen chloride.
 
 
 9
 On February 17, 1994, the government charged six defendants in an indictment filed in the U.S. District Court for the Eastern District of California: Javier, Eliazar, Ambrosio, William Ollie II, Francisco Garcia Leon, and Valentin Aguilar Sanchez. Count I alleged conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count II alleged attempt to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and aiding and abetting the attempt under 18 U.S.C. § 2.
 
 
 10
 The jury convicted all three appellants.[4] Javier was found guilty of Count I and sentenced to 235 months imprisonment. Eliazar was found guilty of Counts I and II, and sentenced to 262 months imprisonment and 5 years of supervised release. Ambrosio was found guilty of Counts I and II, and sentenced to 235 months imprisonment. All three appeal.
 
 1. Eliazar's Confrontation Clause challenge
 
 11
 Eliazar argues that the district court violated his Sixth Amendment right of confrontation when it allowed a narcotics investigator to testify as to statements made by co-defendants Javier and Ambrosio at the time of their arrests.
 
 
 12
 We review de novo alleged violations of the Confrontation Clause of the Sixth Amendment. United States v. Yazzie, 59 F.3d 807, 812 (9th Cir.1995). A Confrontation Clause violation does not require reversal, however, if the error was harmless beyond a reasonable doubt. Toolate v. Berg, 828 F.2d 571, 575 (9th Cir.1987).
 
 
 13
 Where one co-defendant makes an extrajudicial statement implicating his or her co-defendant in a crime for which both are charged, the Sixth Amendment right of confrontation requires that the statement cannot be introduced at their joint trial unless the confessing co-defendant takes the stand and can be cross-examined. Bruton v. United States, 391 U.S. 123, 126 (1968). We have limited the Bruton principle, however, to exclude only statements that are "powerfully incriminating" or "clearly inculpate the defendant." United States v. Arambula-Ruiz, 987 F.2d 599, 605 (9th Cir.1993) (citations omitted).
 
 
 14
 Eliazar first challenges the admission of Javier's statement that he travelled with Eliazar to the Pixley lab. This statement did not "clearly inculpate" Eliazar but merely confirmed his presence at the lab, a fact established independently by his February 8 arrest there. Because it was mere cumulative evidence, the statement did not serve to clearly implicate Eliazar in the crimes of which he was convicted.
 
 
 15
 Eliazar also challenges the admission of Ambrosio's statement that Eliazar gave him money and asked him to buy distilled water and other items that could be used in the manufacture of methamphetamine. This statement does tend to implicate Eliazar in the conspiracy to manufacture methamphetamine, because it suggests that he took an active, even supervisory role in that process on February 7-8. Nonetheless, the error is harmless: As discussed below, other physical and circumstantial evidence supports Eliazar's convictions for both conspiracy and attempt to manufacture methamphetamine.
 
 
 16
 2. Sufficiency of evidence supporting the conspiracy
 
 
 17
 convictions under 21 U.S.C. § 846
 
 
 18
 All three appellants contend there was insufficient evidence to support their convictions for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 846. The standard for reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[5] Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 19
 21 U.S.C. § 846 requires: (1) an agreement to accomplish an illegal objective, and (2) the requisite intent necessary to commit the underlying substantive offense. United States v. Garza, 980 F.2d 546, 552 (9th Cir.1992) (citation omitted). Here, the government needed to prove, first, that appellants agreed to manufacture methamphetamine in violation of 21 U.S.C. § 841, and, second, that each possessed the requisite intent to commit the underlying offense, which under 21 U.S.C. § 841 is "knowingly" or "intentionally." 21 U.S.C. § 841. To establish a conspiracy under 21 U.S.C. § 846, the government need not prove the commission of any overt act in furtherance of the conspiracy.[6] United States v. Shabani, --- U.S. ----, ----, 115 S.Ct. 382, 385 (1994); accord United States v. Simpson, 55 F.3d 420, 421 (9th Cir.), supplemented, 64 F.3d 667, cert. denied by Molina v. United States, 116 S.Ct. 432 (1995).
 
 
 20
 An agreement need not be explicit. An implicit agreement will suffice, and may be inferred from the facts and circumstances of the case. United States v. Monroe, 552 F.2d 860, 862 (9th Cir.), cert. denied, 431 U.S. 972 (1977). In this case, the existence of a fully equipped methamphetamine lab, in recent operation, coupled with appellants' presence at that lab, is strong evidence of a conspiracy to manufacture methamphetamine.
 
 
 21
 Once the existence of a conspiracy has been shown, evidence establishing a defendant's "slight connection" with the conspiracy beyond a reasonable doubt is sufficient to convict the defendant of knowing participation in that conspiracy. Garza, 980 F.2d at 552 (citation omitted). Moreover, the government need not present direct evidence of a defendant's involvement in the conspiracy. Circumstantial evidence and inferences drawn from that evidence will sustain a conspiracy conviction. United States v. Castro, 972 F.2d 1107, 1110 (9th Cir.1992), cert. denied, 507 U.S. 944 (1993).[7]
 
 
 22
 a. Javier
 
 
 23
 Several pieces of evidence support Javier's knowing participation in the conspiracy to manufacture methamphetamine. Javier was arrested while leaving the site of a methamphetamine lab determined to have been in recent operation. The car in which he was found smelled of chemicals and contained materials (butane tanks and air respirators) typically used in methamphetamine labs. Javier's fingerprints were on cans of freon found at the lab. Perhaps the strongest evidence of Javier's knowing participation in the conspiracy were invoices showing that he had, in recent months, purchased chemicals necessary for the manufacture of methamphetamine.
 
 
 24
 Javier attempts to distinguish Cook on several grounds, but his efforts are unavailing. First, Javier argues that, unlike the defendant in Cook, he was not videotaped purchasing chemicals. This difference is insignificant, since Javier's signature and identification number on the invoices clearly established that he purchased the chemicals. Second, Javier argues that, in contrast to Cook, there is no evidence that the chemicals found at the methamphetamine lab were those he purchased. Javier's purchases, however, were evidence of his knowledge or intent to participate in such a conspiracy. Finally, Javier urges that, unlike the defendant in Cook, no physical evidence showed he was inside the lab, and contends that his proximity to the lab is insufficient to support his conviction. This difference is immaterial, however, since considerable other circumstantial evidence linked him to the conspiracy.
 
 
 25
 b. Eliazar
 
 
 26
 Ample evidence also supports Eliazar's conviction for conspiracy to manufacture methamphetamine. Arrested driving away from a methamphetamine lab determined to have been in recent operation, the car in which he was found emitted a chemical odor and contained materials (butane tanks and air respirators) typically used in methamphetamine labs. At the time of his arrest, Eliazar's pants bore a red stain consistent with red phosphorous, a chemical used in the manufacture of methamphetamine, and his fingerprints were on cans of freon found at the lab. Finally, invoices showed Eliazar had made past purchases of chemicals necessary for the manufacture of methamphetamine.
 
 
 27
 Eliazar asserts, without explanation, that several of these facts are consistent with an innocent explanation, and contends that these facts are no more probative of guilt than those adduced in United States v. Wiseman, 25 F.3d 862 (9th Cir.1994), in which we overturned a defendant's conviction for conspiracy to possess marijuana with intent to distribute it. Eliazar's argument must fail. In Wiseman, we concluded that the government failed to show that the defendant had any knowledge of the conspiracy. Wiseman, 25 F.3d at 865. In this case, however, the circumstantial evidence discussed above, particularly Eliazar's purchase of chemicals and equipment needed to manufacture methamphetamine, coupled with his presence at the lab, sufficed to establish his knowing participation in the conspiracy.
 
 
 28
 c. Ambrosio
 
 
 29
 Considerable evidence supports Ambrosio's conviction for conspiracy to manufacture methamphetamine. Also arrested while leaving the site of a methamphetamine lab determined to have been in recent operation, his fingerprints were found at the lab. Invoices showed Ambrosio had purchased ingredient chemicals in the past, suggesting knowledge or intent to manufacture methamphetamine. Moreover, on February 7, he purchased equipment that could be used to manufacture methamphetamine. Perhaps the most powerful evidence of Ambrosio's knowing participation in the conspiracy was his admission that he partook in the grinding of pills, and that he believed some type of drug was being manufactured.[8]
 
 
 30
 This evidence was sufficient to support a finding that Ambrosio agreed to participate in the conspiracy to manufacture methamphetamine, despite his claims that he arrived after the lab was set up and worked at the direction of others. Nor do these assertions refute Ambrosio's admission that he participated in the preparation of chemicals for use in the manufacture of methamphetamine and his admission that he knew drugs were being manufactured.
 
 
 31
 3. Sufficiency of evidence supporting the convictions for
 
 
 32
 attempt and aiding and abetting under 21 U.S.C. § 846
 
 
 33
 and 18 U.S.C. § 2
 
 
 
 [9]
 
 
 
 
 34
 Conviction for attempt requires evidence that the defendant (1) intended to violate the statute, and (2) took a substantial step toward completing the violation. United States v. Davis, 960 F.2d 820, 826-27 (9th Cir.), cert. denied, 506 U.S. 873 (1992).
 
 
 35
 The facts of this case resemble those in United States v. Acuna, 9 F.3d 1442 (9th Cir.1993), in which we upheld a sentence based on a defendant's attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846. In Acuna, we concluded that defendant had taken a substantial step toward the manufacture of methamphetamine where he purchased all the chemicals necessary to manufacture methamphetamine, negotiated for the purchase of glass containers, and promised an informant to sell him the finished product. Acuna, 9 F.3d at 1447. In this case, the operators of the methamphetamine lab had not only obtained all the ingredients necessary to make methamphetamine, but had gone further and actually begun the manufacturing process.
 
 
 36
 a. Eliazar
 
 
 37
 Circumstantial evidence supports an inference that Eliazar both intended to manufacture methamphetamine and took a substantial step toward the manufacture of methamphetamine. Investigators determined that the operators of the lab had already begun preparing hydriodic acid, which is a precursor step to the manufacture of methamphetamine. When Eliazar was arrested leaving the lab site, a red stain was found on his pants, suggesting his exposure to red phosphorous, a key ingredient in hydriodic acid. Moreover, Eliazar's car smelled of chemicals at the time of his arrest. These facts, coupled with his presence at the lab, suggest Eliazar was intentionally involved in the manufacture of hydriodic acid at the Pixley lab. Eliazar's involvement in the preparation of hydriodic acid constituted a substantial step toward the manufacture of methamphetamine and thus supported his conviction for attempt.
 
 
 38
 b. Ambrosio
 
 
 39
 Ambrosio's admission that he knew drugs were being manufactured, along with his past purchases of the chemical ingredients of methamphetamine and his February 7 purchases of equipment needed to manufacture methamphetamine, all established his intent to manufacture methamphetamine. His participation in the grinding of ephedrine pills, one of the ingredients used to manufacture methamphetamine, along with his purchase of distilled water, blenders, and other materials used in the manufacture of methamphetamine, constituted a substantial step toward the manufacture of methamphetamine. These actions were more than "mere preparation," and, indeed, constituted an even more substantial step than those in Acuna; Ambrosio's grinding of ephedrine pills, for one thing, actually began the process of manufacturing methamphetamine.
 
 4. Sentencing issues
 
 40
 We review de novo the district court's application of the Sentencing Guidelines, and review the district court's factual findings in the sentencing phase for clear error. United States v. Oliver, 60 F.3d 547, 554 (9th Cir.1995). A district court's discretionary refusal to depart downward from the Sentencing Guidelines is not reviewable on appeal where the district court did not err in its interpretation of a Sentencing Guidelines provision. United States v. Pinto, 48 F.3d 384, 388 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 125 (1995) (citations omitted).
 
 
 41
 a. Javier's Eighth Amendment challenge
 
 
 42
 This issue is, quite frankly, frivolous. Javier challenges his sentence on the ground that the district court violated the Eighth Amendment in imposing a harsher sentence on him than on William Ollie, who entered a guilty plea to a lesser charge (maintenance of a place for the manufacture of methamphetamine under 21 U.S.C. § 856) and received 18 months imprisonment. As appellant concedes, however, we have held that we lack jurisdiction to address appeals based on disparate sentences where a defendant is sentenced within the range specified by the Sentencing Guidelines. United States v. Arias-Villanueva, 998 F.2d 1491, 1514 (9th Cir.1991), cert. denied by Orantes-Arriaga v. United States, --- U.S. ----, 114 S.Ct. 359 (1993), and cert. denied by Villanueva v. United States, --- U.S. ----, 114 S.Ct. 573 (1993), and cert. denied by Plancarte-Raya v. United States, --- U.S. ----, 114 S.Ct. 573 (1993). In this case, appellant's sentence of 235 months falls squarely within the applicable range for his offense: The district court calculated appellant's offense level at 38, which carries a range of 235 to 293 months. U.S.S.G. § 5A (Sentencing Table). Because appellant's sentence was within the applicable range for his offense, it is not subject to appellate review based on a claim of disparity.
 
 
 43
 b. Javier's challenge under U.S.S.G. § 2D1.1
 
 
 44
 U.S.S.G. § 2D1.1 outlines base levels for various offenses under the drug statutes, including attempt and conspiracy. Application Note 16 provides that "a downward departure may be warranted" where three conditions are met: (1) the amount of controlled substance for which defendant is accountable results in a base offense level of 36 or more; (2) the court finds that such a base offense level overrepresents defendant's culpability; and (3) defendant qualifies for a mitigating role adjustment under U.S.S.G. § 3B1.2. The denial of a downward departure pursuant to Application Note 16 is a decision within the discretion of the district court. Pinto, 48 F.3d at 388.
 
 
 45
 Javier contends the district court should have given him a downward departure pursuant to Application Note 16. First, he argues that a base offense level of 38 overrepresents his culpability. We have held that the standard for determining whether a base offense level "overrepresents [a] defendant's culpability" is whether that base offense level "is commensurate with the defendant's involvement in the crime." Pinto, 48 F.3d at 387. Javier argues that because he was acquitted of attempt, a base offense level of 38 overrepresents his culpability because that level reflected the quantity of methamphetamine his co-defendants were attempting to manufacture. This argument ignores appellant's considerable involvement in the conspiracy, which was not disproportionate to the base offense level.
 
 
 46
 Second, Javier argues that the district court should have found his role in the offense to be "minor" within the meaning of U.S.S.G. § 3B1.2. The district court found that Javier's role was not minor, noting that his recent purchases of chemical ingredients of methamphetamine suggested that he "has been in the business of methamphetamine manufacturing on prior occasions and for some time." Based on the evidence of Javier's involvement in the conspiracy, discussed above, this conclusion was not clearly erroneous.
 
 
 47
 Because we conclude that the district court did not err in its interpretation of Application Note 16 to U.S.S.G. § 2D1.1, we may not review the court's discretionary refusal to depart downward from the Sentencing Guidelines.
 
 
 48
 c. Ambrosio's challenge under U.S.S.G. § 3B1.2(a)
 
 
 49
 U.S.S.G. § 3B1.2(a) permits a four-level reduction, based on a defendant's role in an offense, where the defendant was a "minimal participant" in a criminal activity. The Application Notes accompanying U.S.S.G. § 3B1.2(a) caution that this reduction should be used only "infrequently," and is appropriate where a defendant is "among the least culpable" of those involved in a group criminal activity. See also United States v. Hoac, 990 F.2d 1099, 1105-06 (9th Cir.1993), cert. denied, 114 S.Ct. 1075 (1994). Downward adjustment for a "minor" or "minimal" role in an offense is appropriate only where a defendant's role is minor or minimal compared to other participants in the same offense or relevant conduct. United States v. Kipp, 10 F.3d 1463, 1468 (9th Cir.1993); United States v. Petti, 973 F.2d 1441 (9th Cir.1992), cert. denied, 507 U.S. 1035 (1993).
 
 
 50
 In this case, the district court gave Ambrosio a two-level reduction for playing a "minor" role in the offense, but Ambrosio contends the court should have found he was only a "minimal" participant and granted him a four-level reduction under U.S.S.G. § 3B1.2(a). He bases this argument on his claim that he was a late arrival to the laboratory, and merely followed the orders of others. Neither assertion, however, is supported by anything in the record save Ambrosio's own statements, and both are refuted by Ambrosio's admissions with respect to his involvement in the first stages of the manufacture. The district court's finding that Ambrosio was a minor participant but not a minimal participant was therefore not clearly erroneous.
 
 CONCLUSION
 
 51
 The conspiracy convictions of Javier Reigos Manera, Eliazar Reigos Manera, and Ambrosio Pineda Duque are AFFIRMED. The aiding and abetting and attempt convictions of Eliazar Reigos Manera and Ambrosio Pineda Duque are AFFIRMED. The sentences of Javier Reigos Manera and Ambrosio Pineda Duque are AFFIRMED.
 
 
 
 *
 The panel finds these cases appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The house was rented by William Ollie, who pleaded guilty to maintaining a place for the manufacture of methamphetamine in violation of 21 U.S.C. § 856
 
 
 [2]
 The government's expert testified that the first step in manufacturing methamphetamine is to combine and boil ephedrine hydrochloride, hydriodic acid, and red phosphorous. The manufacture of hydriodic acid, which entails combining red phosphorous and iodine in distilled water, is a preliminary step to this process
 
 
 [3]
 The invoices were admitted into evidence pursuant to Fed.R.Evid. 404(b)
 
 
 [4]
 Count III, which named only Ollie, alleged maintenance of a place for the manufacture of methamphetamine in violation of 21 U.S.C. § 856. Ollie pleaded guilty to Count III and was sentenced to 18 months imprisonment
 Leon pleaded guilty to Count II and received a 34-month sentence. Aguilar was acquitted of Counts I and II during the joint trial.
 
 
 [5]
 This standard applies where a defendant moved for acquittal at the close of evidence, as all three appellants have done. See United States v. Oliver, 60 F.3d 547, 551 (9th Cir.1995)
 
 
 [6]
 All three appellants contend that the government must prove the commission of an overt act to establish a conspiracy under 21 U.S.C. § 846. The Supreme Court's decision in Shabani, however, clearly rejected such a requirement
 
 
 [7]
 Other circuits have upheld convictions for conspiracy to manufacture a controlled substance on similar facts. See, e.g., United States v. Jennings, 945 F.2d 129, 133 (6th Cir.1991), clarified, 966 F.2d 1984 (6th Cir.1992) (defendant helped obtain necessary chemicals, was present at manufacturing site, and aided in manufacture); United States v. Cook, 793 F.2d 734, 735-36 (5th Cir.1986) (defendant purchased laboratory equipment and chemical ingredients of phenylacetone and was observed near a farmhouse housing active phenylacetone lab)
 
 
 [8]
 We upheld a conviction for violation of 21 U.S.C. § 841 on similar facts. United States v. Ramirez-Ramirez, 875 F.2d 772, 774 (9th Cir.1989). Ramirez-Ramirez affirmed a conviction for importing a controlled substance where the defendant did not know the exact nature of the controlled substance he was importing but knew that it was some type of controlled substance. 875 F.2d at 774
 
 
 [9]
 Eliazar and Ambrosio frame their appeals differently, with Eliazar appealing his conviction for aiding and abetting and Ambrosio appealing his conviction for attempt. Because both were convicted under Count II, which charged both attempt to manufacture methamphetamine and aiding and abetting in that attempt, we may sustain their convictions if sufficient evidence supported their convictions for attempt