83 F.3d 430
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Scott Robin ROSTON, Defendant-Appellant.
 No. 94-50656.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1996.
Decided April 25, 1996.
As Amended on Denial of Rehearing July 1, 1996.
 
 1
 Before: PREGERSON, T.G. NELSON, Circuit Judges, and LYNCH,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant Scott Robin Roston ("Roston") was convicted of the second-degree murder of his wife, Karen Roston ("Mrs. Roston). He appeals his 405 month prison sentence under the Sentencing Guidelines. We have jurisdiction under 28 U.S.C. § 1291. We vacate Roston's sentence and remand for a new sentencing hearing.
 
 Analysis
 A. Standard of Review
 
 4
 The district court's determination whether a particular item of evidence is sufficiently reliable to be considered at sentencing is reviewed under an abuse of discretion standard. United States v. Pinto, 48 F.3d 384, 389 (9th Cir.1995), cert. denied, 116 S.Ct. 125 (1995). "Although the Sentencing Guidelines established a limited appellate review of sentencing decisions, [they do] not alter a court of appeals' traditional deference to a district court's exercise of its sentencing discretion. The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court." Williams v. United States, 503 U.S. 193, 194 (1992). A trial court's decision to depart upward based on "unusual circumstances," is reviewed de novo. United States v. Marsh, 26 F.3d 1496, 1503 (9th Cir.1994). We review factual findings upon which such an upward departure is based for clear error. Id. The district court must explain the reasoning for both the direction and degree of its departure in sufficiently specific language to allow meaningful review. 18 U.S.C. § 3553(c)(2); United States v. Lira-Barraza, 941 F.2d 746, 751 (9th Cir.1991) (en banc).
 
 
 5
 B. Letters rogatory.
 
 
 6
 Roston argues that the district court's use of letters rogatory and its failure to specifically state why these letters were reliable violated his due process rights and contravened U.S.S.G. § 6A1.3(a). Roston also claims that the Israeli couple's statements that he had attempted to rob them, in their home, while armed with a knife, are in fact unreliable.
 
 
 7
 The district court specifically found reliable the documents received in response to the letters rogatory. We may reverse this finding of reliability only if the district court abused its discretion. Pinto, 48 F.3d at 389.
 
 
 8
 Roston compares the reliability of these statements to statements described in United States v. Weston, 448 F.2d 626 (9th Cir.1971), cert. denied, 404 U.S. 1061 (1972). In Weston, this court found unreliable an anonymous informant's statement to a federal drug agency employee that the defendant was a major drug dealer. Weston, 448 F.2d at 628, 634. Here, the statements were not made by an anonymous informant, but by the victims themselves. The victims personally knew Roston, and their statements to police officers described the events in detail. These statements, unlike those in Weston, had significant indicia of reliability.
 
 
 9
 The district court emphasized that these documents were certified. Moreover, Roston fails to state any reason for finding that these statements are in fact unreliable, other than that he claimed he was framed and that he was never convicted of a crime. Given the detailed contents of these responses to letters rogatory, the district court here did not need to further explain its grounds for finding these documents reliable. The court did not abuse its discretion in finding the statements reliable. We conclude that neither Roston's due process rights nor U.S.S.G. § 6A1.3(a) were violated.
 
 
 10
 C. Criminal history category.
 
 
 11
 Roston alleges that the district court did not sufficiently set forth the particular facts of Roston's history when it upgraded his criminal history from category I to category II. The district court, however, explained that Roston had attempted armed robbery, had feigned mental illness to avoid prosecution, and that, due to his actions, he was "not entitled to be regarded as a first offender." The court concluded that Roston's criminal history was not adequately represented by category I and that Roston was a "dangerous person with a propensity to commit further crimes."
 
 
 12
 The guidelines state that, "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes," a court may depart upward. U.S.S.G. § 4A1.3. We conclude that the district court did not err in upgrading Roston's criminal history category on the ground that his placement in category I did not reflect the seriousness of Roston's past criminal conduct. We also conclude that Roston's attempted armed robbery in Israel was sufficiently similar to the crime at issue here to justify the criminal history category score increase. See United States v. Cota-Guerrero, 907 F.2d 87, 89 (9th Cir. 1990) (holding that crimes that "show a propensity toward violence and a willingness to use force" justify an upward departure for similar convictions under U.S.S.G. § 4A1.2). We conclude that the district court's factual findings and explanation for upgrading Roston's criminal history from category I to category II were sufficient under the guidelines.
 
 
 13
 D. Collateral estoppel.
 
 
 14
 Roston argues that collateral estoppel bars the government from "relitigating" the factual findings on which his initial sentence was based. He also argues that collateral estoppel barred the government, at resentencing, from introducing the documents from Israel for purposes of increasing his criminal history category.
 
 
 15
 This court has held that, "on remand, the district court may consider any matter relevant to the sentencing" and the district court generally may review the sentence de novo. United States v. Ponce, 51 F.3d 820, 826 (9th Cir.1995) (quoting United States v. Caterino, 29 F.3d 1390, 1394 (9th Cir.1994)). A de novo sentence review precludes application of collateral estoppel. Thus, Roston's collateral estoppel arguments lack merit.
 
 
 16
 E. Reevaluation of sentencing factors under United States v. Brady.
 
 
 17
 Roston claims that the district court's findings at his resentencing were inconsistent with those made at his original sentencing and that United States v. Brady, 928 F.2d 844 (9th Cir.1991) (abrogated on other grounds by Nichols v. United States, --- U.S. ----, ----, 114 S.Ct. 1921, 1928 (1994) prohibits use of such inconsistent findings to depart upward. As this is an issue of law, we review de novo. See United States v. France, 57 F.3d 865, 866 (9th Cir.1995.)
 
 
 18
 Roston's reliance on Brady is misplaced. Brady bars a sentencing court from contradicting implicit jury findings. Brady does not speak to the situation in which a court, on remand, reevaluates its own bases for imposing a sentence even should these new evaluations contradict earlier evaluations. Moreover, we must give due deference to the court's application of the guidelines to its factual findings. United States v. Shabani, 48 F.3d 401, 404 (9th Cir.1995). Roston's Brady argument thus fails.
 
 
 19
 F. Factors for departing upward and judicial vindictiveness.
 
 
 20
 Roston argues that the district court displayed judicial vindictiveness and violated his due process rights by changing the bases on which it departed upward. He also argues that the court used other impermissible methods of "maximizing" his punishment.
 
 
 21
 Here, a presumption of vindictiveness is not triggered because the court did not increase Roston's sentence on remand--he received a sentence of approximately thirty-four years rather than life in prison. It is impossible for Roston to be imprisoned longer under his new sentence than under the previous life sentence because, under his new sentence, he could eventually be released. See United States v. Hagler, 709 F.2d 578, 579 (9th Cir.1983), cert. denied, 464 U.S. 917 (1983) (holding that there is no presumption of judicial vindictiveness if resentencing results in no net increase in punishment).
 
 
 22
 Roston also claims that, in evaluating judicial vindictiveness and whether there was a sentence increase, this court should compare any changes in the factors on which upward departure is based. Under Roston's reasoning, if, at resentencing, the district court increased the upward departure attributable to a particular sentencing factor as compared to the upward departure the court attributed to that factor at the first sentencing, this would constitute a sentence increase. In addition, if the district court cites a factor at resentencing to support departure and that factor was either not considered or rejected as a basis for upward departure at the original sentencing, this would also constitute an impermissible increase that would trigger a presumption of judicial vindictiveness. Roston cites United States v. Vontsteen, 950 F.2d 1086, 1093 (5th Cir.1992), cert. denied, 505 U.S. 1223 (1992), as support for these propositions.
 
 
 23
 Vontsteen does not support Roston's propositions. Vontsteen discusses sentencing increases for certain counts of multi-count indictments, not factors used in calculating upward sentencing departures. In addition, as noted in Vontsteen, this circuit looks to the total sentence imposed on resentencing, not the sentence imposed for particular counts. United States v. Bay, 820 F.2d 1511, 1513 (9th Cir.1987); see also Vontsteen, 950 F.2d at 1092-93 (discussing approaches of various circuits). It follows that, when evaluating whether there is a sentencing increase that triggers a presumption of judicial vindictiveness, we also do not look at the amount of upward departure attributable to particular sentencing factors or changes in these factors.
 
 
 24
 Roston next argues that a court may not reevaluate a defendant's criminal history category at resentencing and upgrade that category based on new evidence of criminal acts committed before the first sentence was imposed.
 
 
 25
 In general, a court may look beyond an arrest record and depart if there is reliable evidence of prior criminal conduct that is not otherwise accounted for. United States v. Gayou, 901 F.2d 746, 748 (9th Cir.1990); U.S.S.G. § 4A1.3(e). If this conduct did not result in a conviction, it must be similar. See U.S.S.G. § 4A1.3(e). In the present case, at the second sentencing hearing the district court specifically found the Israeli documents to be reliable. This reliability finding did not constitute an abuse of discretion. See Pinto, 48 F.3d at 389. In addition, the government did not request a departure based on inadequacy of criminal history at Roston's first sentence. The district court had no occasion to consider this issue because it determined that Roston merited a life sentence. Thus, this criminal conduct was not otherwise accounted for. The conduct in Israel was similar to the charged crime in that both attempted armed robbery and second degree murder are crimes of violence. The district court therefore could look beyond the arrest record. There is no additional requirement that such criminal conduct must have occurred after the first sentencing.
 
 
 26
 In sum, Roston's sentence was decreased rather than increased. As the sentence was not increased, there is no presumption of judicial vindictiveness and Roston also failed to show actual vindictiveness. Roston cites no authority for his argument that the court may not reevaluate a criminal history category or the bases for upward departure on remand. He cites no authority that bars a court from considering, on remand, presentencing conduct that was not otherwise accounted for in the sentence. Thus, all of Roston's arguments relating to judicial vindictiveness fail.
 
 
 27
 G. Scope of remand order.
 
 
 28
 Roston argues that the district court exceeded the terms of this court's remand. Roston argues that this court was explicit in its instructions that the district court limit its review to an explanation of how much of the upward departure was apportioned to each of the two guidelines sections, §§ 5K2.1 (conduct causing death) and 5K2.8 (extreme conduct). But this court did not state that the district court was limited to an explanation of apportionment. We issued a general rather than a limited remand.
 
 
 29
 A proper phrasing of a limited remand would be as follows: "We vacate the sentence and remand for an allocation of the extent of departure." The wording we used here, however, was more general: "The district court failed, however, to explain in terms of the structure, standards and policies of the Sentencing Guidelines why it departed upward ten levels in sentencing Roston, and his sentence must be vacated. Conviction AFFIRMED. Sentence VACATED. Cause REMANDED to the district court for resentencing." Roston, 986 F.2d at 1294.
 
 
 30
 This wording is quite similar to the general remand order we issued in United States v. Caterino, 29 F.3d 1390, 1394 (9th Cir.1994): " '[T]he district court erred by adding multiple vulnerable victim adjustments to Appellant['s] offense level under the Guidelines. We therefore VACATE ... Caterino['s] sentence [ ] and REMAND for resentencing.' " Caterino, 29 F.3d 1390, 1394 (9th Cir.1994) (quoting United Statess v. Caterino, 957 F.2d 681, 684 (9th Cir.1992), cert. denied, 506 U.S. 843 (1992)). We categorized this language as indicating a general rather than a limited remand and therefore concluded that the district court was permitted to review the sentence de novo. Caterino, 29 F.3d at 1395.
 
 
 31
 Likewise, our general remand order here permitted the district court to review Roston's sentence de novo. "The general rule is that a district court on remand may take any matter into account and may hear any evidence relevant to sentencing." Caterino, 29 F.3d at 1394. The district court had jurisdiction to analyze sentencing factors differently than it had at Roston's first sentencing and thus did not exceed the scope of our remand order.
 
 
 32
 H. Terms of the mandate.
 
 
 33
 Roston argues that the district court failed to obey our mandate. We agree. Although we issued a general remand and the district court was thus authorized to resentence de novo, we held that intent to kill could not support an upward departure. The guidelines already factor intent to kill into the recommended sentencing range for second degree murder. Yet the district court did not reevaluate its findings on intent. In fact, the district court continued to cite the fact that Roston's conduct--throwing Mrs. Roston overboard at night, twenty miles from shore, and delaying notification of the crew that Mrs. Roston had gone overboard--made it nearly certain that Mrs. Roston would not be rescued. In continuing to rely on these factual findings when departing upward, the district court continued to base at least part of its upward departure on a finding that Roston intended to kill Mrs. Roston. These findings violate our order that intent to kill cannot support an upward departure for second degree murder.
 
 
 34
 I. Seven-level upward departure.
 
 
 35
 Roston argues that the district court did not properly articulate its reasons for its seven-level upward departure and did not explain the departure in terms of the guidelines. We need not reach this question because we remand this case for resentencing.
 
 
 36
 J. New judge on remand.
 
 
 37
 Roston argues that, should this court vacate Roston's sentence and remand for a new sentencing hearing, the case should be heard by a different judge. But it takes an extreme situation to require reassignment to a different district court judge. Such an extreme situation does not exist here. We therefore remand to the same district judge for resentencing.
 
 CONCLUSION
 
 38
 We VACATE Roston's sentence and REMAND for resentencing under the following criteria:
 
 
 39
 1) While this Court recognizes that abuse of trust, concealment of evidence, and vulnerable victim criteria were only used by analogy to justify a high-end sentence, we have grave doubts that these criteria could be used to justify an upward departure.
 
 
 40
 2) The district court has broad discretion to sentence within the guideline range and may impose a high-end sentence without having to state specific reasons.
 
 
 41
 3) Intent to kill cannot be used to support an upward departure in this case because the guidelines sentence for second-degree murder already takes an intent to kill into account. Therefore, to the extent that Roston's delay in reporting that Mrs. Roston went overboard is treated as evidence of an intent to kill, the district court cannot use this delay to justify an upward departure. For the same reason, the district court cannot use the fact that this crime was committed at night or that Roston threw Mrs. Roston overboard twenty miles from shore. Both of these facts are evidence of an intent to kill which, as stated above, is already factored into the guidelines sentence to punish second-degree murder.
 
 
 42
 4) The district court erred in imposing a seven-level upward departure because, in doing so, it partially relied on factors related to intent to kill. Intent to kill is already accounted for in the Sentencing Guidelines for second degree murder. Knowing that such factors cannot be used, on remand the district court should redetermine what is a reasonable sentence.
 
 
 43
 5) The district court should not only explain any departure itself, but should also explain the reasons behind the number of levels chosen. As Lira-Barraza states, "To facilitate appellate review the district court's statement should include a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and Guidelines." Lira-Barraza, 941 F.2d at 751 (emphasis added).
 
 
 44
 We VACATE and REMAND for resentencing consistent with the views hereinabove expressed.
 
 
 
 *
 The Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3